STATE of Wisconsin, Plaintiff-Respondent,

v.

James C. HUDSON, Defendant-Appellant.†

Court of Appeals

*No. 2012AP2188–CR. Submitted on briefs August 6, 2013.
—Decided September 10, 2013.*

2013 WI App 120

(Also reported in 839 N.W.2d 147.)

† Petition for Review.

73

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Randall E. Paulson*, assistant state public defender of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Maura FJ Whelan*, assistant attorney general.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. FINE, J. James C. Hudson appeals the judgment entered on his no-contest pleas to making false

statements in connection with the sale of securities, *see* Wis. Stat. § 551.41(2) (2005–06), and to making misleading statements or omissions in connection with the sale of securities, *see* Wis. Stat. § 551.501(2) (2009–2010).[1] He also appeals the circuit court's denial of his motion for postconviction relief.[2] He essentially claims that he did not know what he was doing when he pled no-contest, and that there were insufficient factual bases to support his pleas. We affirm.

## I.

¶ 2. In November of 2010, the State issued a criminal complaint charging Hudson with six felonies: Count 1—a ten-year felony of theft by fraud, *see* Wis. Stat. § 943.20(1)(d) & (3)(c); Count 2—a six-year felony of making a false statement in connection with the sale of securities, *see* Wis. Stat. § 551.41(2) (2005–2006); Count 3—a six-year felony of theft by fraud, *see* Wis. Stat. § 943.20(1)(d) & (3)(bm); Count 4—a six-year felony of making a false statement in connection with the sale of securities, *see* Wis. Stat. § 551.41(2) (2005–2006); Count 5—a ten-year felony of theft by fraud, *see* Wis. Stat. § 943.20(1)(d) & (3)(c); Count 6—a six-year felony of making a false statement in connection with the sale of securities, *see* Wis. Stat. §§ 551.501(2) & 551.508(1) (2009–2010). The matter was plea bargained, and the State allowed Hudson to

---

[1] The Honorable Dennis R. Cimpl accepted James C. Hudson's no-contest pleas.

As we show below, Wis. Stat. § 551.501(2) (2009–2010) replaced Wis. Stat. § 551.41(2) (2005–2006), effective January 1, 2009. *See* 2007 Wis. Act 196, § 16.

[2] The Honorable Michael D. Goulee denied Hudson's motion for postconviction relief.

choose the counts to which he wanted to plead "no contest." Hudson chose Counts 4 and 6.

¶ 3. Count 4 charged that "between January 2006 and March 2007," Hudson "as a person, in connection with the offer, sale or purchase of a security in this state, directly or indirectly made an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]" The Count referenced WIS. STAT. § 551.41(2) (2005–2006). Count 6 charged that "between April 2010 and May 2010," Hudson "did willfully, in connection with the offer, sale or purchase of a security directly or indirectly make an untrue statement of material fact, or omitted to state a material fact necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading[.]" The Count referenced WIS. STAT. §§ 551.501(2) and 551.508(1) (2009–2010). The complaint's body set out extensive assertions by the victims to support the charges that Hudson induced them to invest in his musical career by lying to them. The complaint also alleged that those who gave Hudson the money said that they would not have done so if Hudson had not lied to them. The State filed its Information in April of 2011.

¶ 4. In July of 2011, Hudson and his trial lawyer executed a "Plea Questionnaire/Waiver of Rights" form. Hudson represented on the form that he was then 54 years old and had completed "15 years of schooling," adding in handwriting "3 yrs UWM." Hudson also represented: "I understand that the crime(s) to which I am pleading has/have elements that the State would have to prove beyond a reasonable doubt if I had a trial. These elements have been explained to me by my

attorney or are as follows: [there are two blank lines]." A box next to "See Attached sheet" is checked, and the attachment is a pattern Wisconsin jury instruction, "Wis JI-Criminal 2904," headed "Securities Fraud: Making an Untrue Statement of Material Fact in Connection with the Sale of a Security—§§ 551.501(2) and 551.508." (Uppercasing and bolding omitted.) The elements that the instruction says the State would have to prove to a jury beyond a reasonable doubt are, as material to this appeal:

1. The item [offered] [sold] was a security as defined by Wisconsin law.

 A [*insert applicable term from 551.102(28)*] is a security.

2. The defendant [made an untrue statement of material fact] [omitted to state a material fact necessary to make the statements made not misleading] in connection with the offer, sale or purchase of a security in this state.

 ["Offered" includes every attempt or offer to sell or dispose of a security or interest in a security for value.]

 ["Sold" includes every sale, disposition or exchange, and every contract of sale of, or contract to sell, a security or interest in a security for value.]

 A fact is a "material fact" if it could be expected to influence a reasonable investor in making a decision whether to purchase an investment.

 [A fact is also a "material fact" if the maker of the representation knows that the investor regards the matter as important in making a

decision whether to purchase an investment, even though a reasonable investor would not regard it as important.]

3. The defendant acted willfully.

"Willfully" requires that the defendant knowingly [made an untrue statement of material fact] [omitted to state a material fact necessary to make the statements made not misleading] in connection with the offer, sale or purchase of a security. Proof of intent to violate the law or knowledge that the law was being violated is not required.

Wis JI—Criminal 2904 (brackets and underlining in the original; footnotes omitted.) The footnote to the sentence that starts "A [*insert applicable term from 551.102(28)*] is a security" explains, as material here: "In *State v. Johnson,* 2002 WI App 224, 257 Wis. 2d 736, 652 N.W.2d 642, the court held that offers involving promises to repay loans at above market rates were offers to sell 'securities.' The court adopted the 'family resemblance' test articulated in *Reves v. Ernst & Young,* 494 U.S. (1990), previously applied in *State v. Mueller,* 201 Wis. 2d 121, 549 N.W.2d 455 (Ct. App. 1996)." *Johnson* described the "family resemblance" test by referencing and adopting the *Reves* analysis:

First, it examined the transaction to determine the motivation that caused the borrower and the lender to enter into it. Second, it examined the "plan of distribution" of the note to determine whether it is commonly traded for speculation or investment. Third, it examined the reasonable expectations of the investing public. And fourth, it examined whether there was another regulatory scheme or some other factor that significantly reduced the risk of the instrument, thereby causing the application of the securities laws to be unnecessary to protect the public.

81

*Johnson*, 2002 WI App 224, ¶ 13, 257 Wis. 2d at 745–746, 652 N.W.2d at 646. The jury-instruction footnote also alerted the reader that "Section 551.102(28) provides an extensive definition of 'security.' If the item involved in the case is alleged to be an item specified in that definition, the Committee recommends that the jury simply be told, for example, that 'common stock is a security.' It is for the jury to determine whether the item involved in the case is in fact common stock." WIS. JI—CRIMINAL 2904, cmt. 1.

¶ 5. As we have seen, two statutes are implicated in this case: WIS. STAT. § 551.41(2) (2005–2006) and WIS. STAT. § 551.501(2) (2009–2010). Section 551.41(2) was the statute in effect during the time covered by Count 4. It was repealed effective January 1, 2009 by 2007 Wis. Act 196, § 16. Section 551.501(2) was the statute in effect during the time covered by Count 6. It was created by 2007 Wis. Act 196, § 16.

¶ 6. WISCONSIN STAT. § 551.41 (2005–2006) provided, as material:

It is unlawful for any person, in connection with the offer, sale or purchase of any security in this state, directly or indirectly:

. . . .

(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]

WIS. STAT. § 551.58 (2005–2006) made the person who "willfully violate[d]" § 551.41(2) "guilty of a Class H felony."

¶ 7. WISCONSIN STAT. § 551.501 (2009–2010) provides, as material:

It is unlawful for a person, in connection with the offer, sale, or purchase of a security, directly or indirectly, to do any of the following:

. . . .

**(2)** To make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

Thus, the two subsections are substantively identical. WISCONSIN STAT. § 551.508 (2009–2010) makes the person who "willfully violates" § 551.501 "guilty of a Class H felony." A person guilty of a Class H felony is subject to "a fine not to exceed $10,000 or imprisonment not to exceed 6 years, or both." WIS. STAT. § 939.50(3)(h).

¶ 8. WISCONSIN STAT. § 551.02(13)(a) (2005–06) as material, defined "[s]ecurity" as:

[A]ny stock; treasury stock; note; bond; debenture; evidence of indebtedness; share of beneficial interest in a business trust; certificate of interest or participation in any profit sharing agreement; collateral trust certificate; preorganization subscription; transferable share; *investment contract;* commodity futures contract; voting trust certificate; certificate of deposit for a security; limited partnership interest; certificate of interest or participation in an oil, gas or mining title or lease or in payments out of production under such a title or lease; or, in general, any interest or instrument commonly known as or having the incidents of a security or offered in the manner in which securities are offered; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of or option, warrant or right to subscribe to or purchase or sell, any of the foregoing.

(Emphasis added.) WISCONSIN ADMIN. CODE § DFI-Sec 1.02(6) (2006) provided, as material to this appeal:

83

"Investment contract" as used in s. 551.02(13)(a), Stats., includes:

(a) Any investment in a common enterprise with the expectation of profit to be derived through the essential managerial efforts of someone other than the investor. In this subsection, a "common enterprise" means an enterprise in which the fortunes of the investor are tied to the efficacy of the efforts of those seeking the investment or of a 3rd party[.]

WISCONSIN STAT. § 551.102(28) (2009–2010), provides, as material to this appeal:

"Security" means a note; stock; treasury stock; security future; bond; debenture; evidence of indebtedness; limited partnership interest; life settlement investment or similar agreement; certificate of interest or participation in a profit-sharing agreement; collateral trust certificate; preorganization certificate or subscription; transferable share; *investment contract;* voting trust certificate; certificate of deposit for a security; fractional undivided interest in oil, gas, or other mineral rights; put, call, straddle, option, or privilege on a security, certificate of deposit, or group or index of securities, including an interest therein or based on the value thereof; put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency; or, in general, an interest or instrument commonly known as a "security"; or a certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. The term:

(a) Includes both a certificated and an uncertificated security.

. . . .

(d) Subject to the exception in par. (e), includes all of the following:

1. An investment in a common enterprise with the expectation of profits to be derived through the essential managerial efforts of someone other than the investor. For purposes of this subdivision, a "common enterprise" is an enterprise in which the fortunes of the investor are tied to the efficacy of the efforts of those seeking the investment or a third party . . . .[3]

(Emphasis added.)

¶ 9. As noted, the State gave Hudson the option of choosing the two counts to which he would plead "no contest," and Hudson chose counts four and six. The State indicated at Hudson's plea hearing that the parties' plea bargain envisioned the State "moving to dismiss and read in the other four counts in the six count criminal complaint." After Hudson told the trial court that he understood what the State was proposing and what the possible penalties were, he was placed under oath, and responded to the trial court's questions as follows and as material to the issues raised on this appeal:

THE COURT: I have in front of me a packet of papers called a plea questionnaire and waiver of rights form, did you sign these?

THE DEFENDANT: Yes, sir.

THE COURT: Did your lawyer explain this form to you?

THE DEFENDANT: Yes, sir.

THE COURT: Did you understand it?

THE DEFENDANT: I did.

---

[3] WISCONSIN STAT. § 551.102(28) was modified by 2009 Wis. Act 344, § 9, in a way that is not material to this appeal. Further, WIS. STAT. § 551.102(28)(e) does not affect this appeal.

THE COURT: Are your answers true and correct?

THE DEFENDANT: True and correct.

THE COURT: You understand by signing this you are pleading no contest to those two charges?

THE DEFENDANT: Yes.

THE COURT: You understand upon a plea of no contest I am going to accept as true the allegations in the complaint and find you guilty of both of those charges?

THE DEFENDANT: Yes, sir.

THE COURT: Did your lawyer explain to you what the State would have to prove in order for me to find you guilty of Counts 4 and 6?

THE DEFENDANT: He did.

. . . .

THE COURT: In order for you to be found guilty of Count 2 [*sic*], making false statements, what the State has to prove and what you are admitting to is that you offered to sell a security as defined by Wisconsin law. And you made, in Count 2 [*sic*], an untrue statement of material fact in connection with that offer or sale of a security. And in Count—I am sorry, that is Count 4. And in Count 6 you omitted to state a material fact necessary to make the statement not misleading in connection with a sale.

THE DEFENDANT: Yes.

. . . .

THE COURT: Have you had enough time to go over this with your lawyer?

THE DEFENDANT: I have.

THE COURT: Did your lawyer discuss with you whether or not he thought there were any defenses to the charges?

THE DEFENDANT: Yes, he did.

THE COURT: Are you satisfied that you sufficiently discussed with your lawyer and understand the nature of the charges against you, whether or not there are any defenses, and any other circumstances with respect to these charges?

THE DEFENDANT: Yes.

THE COURT: Are you satisfied with the way [the defense lawyer] is representing you?

THE DEFENDANT: Absolutely.

THE COURT: Are you confused about anything you are doing here today?

THE DEFENDANT: No, sir.

THE COURT: Is there anything about this plea procedure you do not understand?

THE DEFENDANT: No, I understand.

THE COURT: Any questions about what you are doing here this morning that you have for me?

THE DEFENDANT: No, sir.

. . . .

THE COURT: Mr. [defense lawyer], did you go over the plea questionnaire and waiver of rights form with your client?

[The Defense Lawyer]: I did.

THE COURT: Did you go over the elements of the offense with him?

[The Defense Lawyer]: Yes.

. . . .

87

THE COURT: Are you satisfied that he under-stands all of those things including the elements of the offense and how they relate to his conduct?

[The Defense Lawyer]: Yes, I am.

. . . .

THE COURT: Did you go over whether or not there are any defenses and any mitigating circum-stances with respect to the charges?

[The Defense Lawyer]: Yes, sir.

THE COURT: Are you satisfied he understands those?

[The Defense Lawyer]: Yes, sir.

. . . .

THE COURT: Do you know of any reason why he should not enter this plea?

[The Defense Lawyer]: I do not.

. . . .

THE COURT: Can I use the complaint as a fac-tual basis in order to find him guilty?

[The Defense Lawyer]: Yes.

The trial court found Hudson guilty and set a date for sentencing. After an extensive hearing, and testimony by the three victims in connection with the counts to which Hudson pled no contest and two other investors, the trial court sentenced Hudson to two six-year terms of imprisonment, with three years of initial confine-ment followed by three years of extended supervision for each of the two counts to which Hudson pled "no contest." The trial court ordered the terms to run consecutively. It also ordered that Hudson pay restitu-tion to the victims. The parties stipulated that restitu-

tion of $355,961.19 should be paid to eleven victims—those who were the subject of both the pled-to counts and the read-in counts. Hudson as well as his trial lawyer signed the stipulation, as did the prosecutor. The trial court ordered the restitution as thus stipulated.

¶ 10. Hudson wants to withdraw his no-contest pleas, and we now turn to his contentions.

## II.

¶ 11. A defendant may withdraw a guilty or no-contest plea after sentencing if he or she proves "by clear and convincing evidence that withdrawal is necessary to correct a manifest injustice." *State v. James*, 176 Wis. 2d 230, 236–237, 500 N.W.2d 345, 348 (Ct. App. 1993). The manifest-injustice test is satisfied if the defendant's plea was the result of constitutionally ineffective assistance of counsel. *See State v. Washington*, 176 Wis. 2d 205, 213–214, 500 N.W.2d 331, 335 (Ct. App. 1993). To establish constitutionally ineffective legal representation, a defendant must show: (1) deficient representation; and (2) prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficient representation, a defendant must point to specific acts or omissions by the lawyer that are "outside the wide range of professionally competent assistance." *Id.*, 466 U.S. at 690. To prove prejudice, a defendant must demonstrate that the lawyer's errors were so serious that the defendant was deprived of . . . a reliable outcome." *Id.*, 466 U.S. at 687. We need not address both aspects of the *Strickland* test if the defendant does not make a sufficient showing on one, *see Strickland*, 466 U.S. at 697, and we decide *de novo* the legal issues underlying an assertion that a lawyer was constitutionally ineffective, *see State v. Johnson*, 153 Wis. 2d 121, 128, 449 N.W.2d 845, 848 (1990).

¶ 12. The manifest-injustice test is also satisfied if the defendant's guilty or no-contest plea was not knowing or voluntary. *State v. Hoppe*, 2009 WI 41, ¶ 60, 317 Wis. 2d 161, 193, 765 N.W.2d 794, 809–810 ("A defendant may demonstrate a manifest injustice by showing that his guilty plea was not made knowingly, intelligently, and voluntarily."). When a defendant contends that his or her plea was not knowing or voluntary, the circuit court may deny a motion to withdraw the plea if " 'the defendant fails to allege sufficient facts in his motion to raise a question of fact, or presents only conclusionary [*sic*] allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief.' " *Id.*, 2009 WI 41, ¶ 59 n.36, 317 Wis. 2d at 192 n.36, 765 N.W.2d at 809 n.36 (citation omitted). A defendant also shows the requisite "manifest injustice" when the trial court does not make sure that there is a sufficient factual basis for the plea. *State v. Smith*, 202 Wis. 2d 21, 25, 549 N.W.2d 232, 233–234 (1996). "However, in the context of a negotiated guilty plea, [the supreme] court has held that a court 'need not go to the same length to determine whether the facts would sustain the charge as it would where there is no negotiated plea.' " *See id.*, 202 Wis. 2d at 25, 549 N.W.2d at 234 (citation omitted). Further, we largely defer to the trial court's determination that there was a sufficient factual basis to support the plea. *Ibid.* ("The determination of the existence of a sufficient factual basis lies within the discretion of the trial court and will not be overturned unless it is clearly erroneous.").

¶ 13. Hudson argues that he should be permitted to withdraw his no-contest pleas to counts four and six because, he claims: (1) his "conduct, as a matter of law, did not involve securities"; (2) the trial court "did not

establish a factual basis" supporting Hudson's pleas; (3) Hudson "was never provided with a correct definition of securities, and the only definition in the record is the demonstrably incorrect and watered-down one provided by the prosecutor"; and (4) he is entitled to an evidentiary hearing "on his post-conviction allegation that his trial counsel provided a different, but still demonstrably incorrect and watered-down definition of the securities element." These are the numbered central cords of Hudson's appellate argument but the essential threads are largely amorphously unfocused rhetoric, which the State also notes with some frustration. Accordingly, we cut to the core of Hudson's contentions in the order he presents them. *See State v. Waste Management of Wisconsin, Inc.*, 81 Wis. 2d 555, 564, 261 N.W.2d 147, 151 (1978).

A. *Securities.*

¶ 14. As we have seen in Part I, current Wisconsin law defines "security" for the purpose of the crimes alleged here as an "investment contract" that "includes all of the following:"

> An investment in a common enterprise with the expectation of profits to be derived through the essential managerial efforts of someone other than the investor. For purposes of this subdivision, a "common enterprise" is an enterprise in which the fortunes of the investor are tied to the efficacy of the efforts of those seeking the investment or a third party.

WIS. STAT. § 551.102(28)(d)1 (2009–2010). The statute also specifically declares that the word "security" "[i]ncludes . . . an uncertificated security." § 551.102(28)(a) (2009–2010).

91

¶ 15. As we have also seen, the law before the January 1, 2009, revision was the same. WISCONSIN STAT. § 551.02(13)(a) (2005–2006) defined "security" as including an "investment contract." Further, the applicable regulation, WISCONSIN ADMIN. CODE § DFI-Sec 1.02(6) (2006) declared that that "investment contract" encompassed:

> (a) Any investment in a common enterprise with the expectation of profit to be derived through the essential managerial efforts of someone other than the investor. In this subsection, a "common enterprise" means an enterprise in which the fortunes of the investor are tied to the efficacy of the efforts of those seeking the investment or of a 3rd party[.]

Significantly, "ch. DFI–Sec 1, Wis. adm. code" is given as the first "Cross Reference" (bolding omitted) under the 2005–2006 edition of the Wisconsin Statutes. Further, the pattern jury instruction attached to Hudson's guilty-plea-questionnaire-and-waiver-of-rights form, which he testified at his plea hearing he read, also noted: "Some items that are included in the definition of "security" may require further definition. For example, 'investment contract' is defined in the Wisconsin Administrative Code § DFI-Sec. 1.02(6)." WIS. JI—CRIMINAL 2904, cmt. 1. Although, as Hudson points out, this footnote erroneously refers to the new statute, which, as we have seen, incorporated the department's regulation's definition, the earlier version of the statute *was* supplemented by the regulation. So, in the context of this case, the footnote was helpful to fill in the definition of "security" and "investment contract" as those terms were used in WIS. STAT. § 551.01(13)(a) (2005–2006).

¶ 16. As we have seen, Hudson and his lawyer agreed at his plea hearing that the extensive allegations in the criminal complaint could be considered by the

92

trial court as establishing factual bases for Hudson's no-contest pleas. The complaint alleged the following in connection with the three persons whose victimhood formed the basis for counts four and six (the restitution order separates the victims of the crimes that were read-in, and those who were victims of the crimes that were charged):

Pamela Hill: Hill gave Hudson "more than $100,000" "based on his request that she invest in his country music career. [Hudson] told Hill that she was his only investor, and promised her a 300% return on her money." The complaint further alleges with specifics that we need not repeat here, that his assurance to Hill that "she was his only investor" was false, as were some of his other "representations to Ms. Hill in connection with this investment contract."

Kelly Dixon: Hudson "told her that he was a musician and asked her if she would be interested in an investment opportunity due to his wish of becoming a country music singer. [Hudson] told Dixon that she would receive double and eventually triple her initial investment." The complaint also summarizes the lies it alleges that Hudson told her to get her to invest, including not telling her that he had received significant sums from other "investors."

Carol Scott: Hudson told Scott "that he was getting his band back together and he needed money. [Hudson] told her that she would be the sole investor in his band." The complaint asserts that this representation was not true and that had Scott "known about all the other investors who

93

[*sic*] [Hudson] had taken money from without making repayment, she would not have invested in [Hudson]'s band."

¶ 17. Those allegations more than sufficiently assert that Hudson conned persons to invest in his music career and fully support the factual bases for Hudson's no-contest pleas. *See State v. LaCount*, 2008 WI 59, ¶ 31, 310 Wis. 2d 85, 103, 750 N.W.2d 780, 789–790 (An "investment contract" includes those situations where "an investor may have a role in the managerial efforts of an investment contract, so long as the investor does not provide the essential managerial efforts for the investment contract[,]" applying "Wis. Admin. Code § DFI 1.02(6)(a) (Dec. 2004)" that defined "an investment contract as '[a]ny investment in a common enterprise with the expectation of profit to be derived through the essential managerial efforts of someone other than the investor.'"), *cert. denied*, 555 U.S. 1046 (brackets in *LaCount*). As we have seen, Wis. Stat. § 551.102(28)(d)1 (2009–2010) is almost identical. Further, although Hudson's appellate brief seeks to suggest otherwise (without giving us a decision that says so), a writing is *not* required for an "investment contract" to be a "security" under Wis. Stat. § 551.02(13)(a) (2005–2006). *See State v. Johnson*, 2002 WI App 224, ¶ 11, 257 Wis. 2d 736, 744, 652 N.W.2d 642, 645–646.[4] Further, although *LaCount* does not indicate it, the "investment contract" at issue there was also not in writing. *See* Brief for Louis H. LaCount, *State v. LaCount*, 2008 WI 59, 310

---

[4] *State v. Johnson*, 2002 WI App 224, ¶ 11, 257 Wis. 2d 736, 743–744, 652 N.W.2d 642, 645–646, applied Wis. Stat. § 551.02(13)(a) (1999–2000). There is no difference between Wis. Stat. § 551.02(13)(a) (2005–2006) and § 551.02(13)(a) (1999–2000).

Wis. 2d 85, 750 N.W.2d 780, (No. 2006AP672), 2007 WL 7259972 at *7; Brief for State of Wisconsin, *State v. LaCount*, 2008 WI 59, 310 Wis. 2d 85, 750 N.W.2d 780, (No. 2006AP672), 2007 WL 7259973 at *35. Not requiring a writing is, of course, fully consistent with the general principle that contracts may be either oral or written. Thus, as noted earlier, the current version of the applicable statute, Wis. Stat. § 551.102(28)(a) declares specifically that "security" "[i]ncludes . . . an uncertificated security."

¶ 18. Hudson's contention that the conduct he admitted did not involve securities "as a matter of law" is without merit.

B. *Factual basis.*

¶ 19. As we have seen, this was a plea-bargained case where the State permitted Hudson to choose the two counts to which he would plead no-contest. In light of the law that we have already set out, Hudson's contention that the trial court's careful questions to Hudson and Hudson's responses together with the extensive allegations in the complaint did not establish sufficient factual bases for Hudson's no-contest pleas borders on the frivolous.

C. *Correct definition of "securities."*

██ ██

¶ 20. Hudson's appellate brief contends that at the plea hearing the prosecutor gave "a Demonstrably Incorrect, Watered Down Definition" of "Securities" that was "Not Corrected Elsewhere in the Record." (Initial capitalization in original.) He seeks an evidentiary hearing on this issue. This is how his main brief frames this argument, as material to our analysis:

> The prosecutor told the court that his proffered definition of an investment contract/security " . . .has been supported by the State of Wisconsin Department of Financial Institutions." Footnote one in Wis. JI Criminal 2904 (2011) states that the department has an administrative rule, DFI-Sec. 1.02(6), which defines an "investment contract." However, that provision was repealed effective January 1, 2009 (the effective date of the reenacted Chapter 551). It was repealed because its "two definitional rules," . . . were "expressly included [as par. (d) 1 and 2.] in the statutory definition of 'security' in s. 551.102(28). *Department of Financial Institutions, Clearinghouse Rule 08–077, §16* (October 30, 2008) (brackets in original). Thus, contrary to the prosecutor's apparent implication, and contrary to footnote one in the instruction, it does not appear that the Department of Financial Institutions supplements the current statutory definitions of "investment contract."

(Record references omitted.) Although, as Hudson indicates, the prosecutor and the jury instruction committee were remiss in not recognizing that the definition of what had been in the administrative regulation was now in the statute, this *did not make the definition* presented to Hudson in the jury instruction wrong: it, as we have seen, referenced "551.102(28)," which encompasses the same definition that was in the department regulation. Further, Hudson's complaint that the trial court gave him "conflicting information about whether the State would have to prove he acted willfully only in one of the counts," is belied by the totality of the circumstances at the plea hearing. Indeed, the jury instruction recites that the State must prove willfulness beyond a reasonable doubt and explains that term. That instruction was attached to Hudson's guilty-plea-questionnaire-and-waiver-of-rights form, which *in haec verba* indicated that the form covered Hudson's

96

no-contest pleas to the two counts. The trial court's momentary and inadvertent misspoken reference to "Count 2," which it quickly corrected, does not negate any of this.

▮▮▮

¶ 21. As a subpart to this third main argument, Hudson also complains that the trial court did not "ensure Mr. Hudson's 'understanding of the nature of the charge,' " as required by WIS. STAT. § 971.08(1)(a) ("Before the court accepts a plea of guilty or no contest, it shall . . . Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted."). The trial court fully complied with this directive. The trial court, again contrary to Hudson's argument, also fully complied with § 971.08(1)(b) ("Before the court accepts a plea of guilty or no contest, it shall . . . Make such inquiry as satisfies it that the defendant in fact committed the crime charged."), by affirming that Hudson understood that the trial court would accept the complaint's extensive recitation of how Hudson induced the victims to give him their money as the factual bases for his no-contest pleas.

D. *Evidentiary hearing on Hudson's claim that his trial lawyer gave him constitutionally deficient representation.*

▮▮▮

¶ 22. Hudson complains that his trial lawyer misled him as to what the State would have to prove. Thus, in his motion for postconviction relief, his postconviction lawyer's memorandum alleges that Hudson would testify at a postconviction evidentiary hearing that:

97

He *does not recall* that his trial counsel gave him a definition of "investment contract" or securities. *It is possible* trial counsel told him that securities existed if he got paid by check, but he and his counsel spent little time on the securities issue. He then accepted the definition of securities the prosecutor gave in court, believing the court accepted it. His trial counsel emphasized that avoiding convictions would require a jury to find doubts about claims by numerous accusers that Mr. Hudson misled them. Also, trial counsel emphasized the number of charges and the need to reduce exposure. Mr. Hudson did not know any definition of security when he entered his plea.

(Emphasis added.) Hudson's postconviction lawyer also represents him on this appeal.

¶ 23. Hudson's assertions do not require a hearing on Hudson's ineffective-assistance-of-counsel claim, even though Hudson did not have to file a supporting affidavit. *See State v. Brown*, 2006 WI 100, ¶ 62, 293 Wis. 2d 594, 629, 716 N.W.2d 906, 923 ("A defendant is not required to submit a sworn affidavit to the court."). As we have already seen, a defendant seeking an evidentiary hearing must present more than vague, conclusory allegations, and these allegations must go to the nub of the defendant's rights. *See Hoppe*, 2009 WI 41, ¶ 59 n.36, 317 Wis. 2d at 192 n.36, 765 N.W.2d at 809 n.36.

¶ 24. Hudson's proposed testimony reveals that his lawyer accurately told him that any successful trial on the charges "would require a jury to find doubts about claims by numerous accusers that Mr. Hudson misled them." This advice was not wrong, and was hardly deficient. Further, Hudson would have this burden at any trial under the law as it is (under both the pre- and post-2007 Wis. Act 196 revisions), and not as he might wish it to be. Thus, Hudson's no-contest

pleas did not forego a trial under a legal theory where Hudson could prevail *unless* he persuaded a factfinder that his alleged victims were lying; his lawyer gave him unimpeachably accurate advice as to what would be in essence *the only* issue at the trial—whether a factfinder believed his alleged victims.

¶ 25. Further, as we have also seen, the trial court carefully and successfully ensured that Hudson's pleas were supported by the requisite factual bases, and, significantly, the jury instruction attached to Hudson's guilty-plea-questionnaire-and-waiver-of-rights form fully presented the required information as well as giving guideposts as to where additional information might be had if Hudson had any questions. He emphatically told the trial court *under oath* that he had *no* questions and that he was "[a]bsolutely" satisfied with what his lawyer was doing. He also told the trial court *under oath* that he was not confused about anything. As the postconviction circuit court recognized, this matter is one of "buyer's remorse"; Hudson got a very lenient plea bargain in light of all the money he took from his victims, and the repeated lies he told them to get them to give him their money.

¶ 26. Hudson has not shown a need for a postconviction hearing in connection with his post-sentencing claim that his lawyer let him down by not giving him constitutionally effective representation.

*By the Court.*—Judgment and order affirmed.