DUGAN, J.
¶ 1 Darrick L. Bennett appeals from a judgment of conviction entered upon his guilty plea to one count of first-degree reckless homicide in the death of C.S., in violation of WIS. STAT. § 940.02(1) (2011-12).[1] He also appeals the denial of his motions for post-conviction relief and post-conviction discovery.[2]
¶ 2 On appeal, Bennett argues that he was entitled to a hearing on his claims that his plea was not voluntary, knowing, and intelligent, that trial counsel was ineffective in advising him to enter the plea, and that he was entitled to sentence modification based on new factors that the trial court overlooked or "mis-depicted" at sentencing. He also argues that the post-conviction court erred in denying his motion for post-conviction discovery of the victim's medical records.
¶ 3 We conclude that Bennett failed to allege sufficient facts that would entitle him to a hearing on his claims for plea withdrawal and ineffectiveness of trial counsel. Bennett's argument is premised on his assertion that he did not know that his conduct-beating and strangling C.S.-was potentially lethal. However, that is not the standard of proof for first-degree reckless homicide-the State need only prove that Bennett's conduct created the risk of death or great bodily harm-not death alone.[3] Therefore, if Bennett was aware that his conduct created the risk of great bodily harm to C.S., he had no defense.[4] He does not allege that he was unaware of that risk. Therefore, Bennett failed to allege sufficient facts to entitle him to a hearing on his claims that his plea was not voluntary, knowing, and intelligent, and that trial counsel was ineffective in advising him to enter his plea to first-degree reckless homicide.
¶ 4 We also conclude that Bennett's sentence modification request was properly denied without a hearing because Bennett failed to identify any new factors that would entitle him to sentence modification. All of the facts that he raises existed, or were known to the trial court or the parties, at the time of sentencing. We further conclude that he is not entitled to post-conviction discovery because he has not shown that the requested discovery is critical, relevant, and material to his sentence.
¶ 5 For these reasons, we affirm.
BACKGROUND
¶ 6 In the early morning hours of September 13, 2011, the Milwaukee police and fire department were dispatched to Bennett's home for a reported suicide attempt. The fire department arrived first and had trouble trying to enter the apartment. In an effort to help, a neighbor telephoned Bennett's live-in girlfriend, C.S., but there was no answer. The neighbor then telephoned Bennett, who told her that he called 911 and left the apartment, but left the back door open. The neighbor then asked Bennett if he beat C.S., and he stated, "No, it's worse than that."
¶ 7 When the police arrived, they saw C.S. lying on the bed. She was deceased-cold and stiff. The neighbor told the police that C.S. and Bennett lived together and had a history of physical abuse. The neighbor also told police that the night before, C.S. told the neighbor that Bennett had been beating her often and, if she was to die, Bennett would be responsible.
¶ 8 When the police interviewed Bennett, he described what happened. Bennett told the police that when he discovered C.S. was having an affair with his cousin, he was angry and told C.S. that she had to leave. When she did not leave and tried to hug him, Bennett responded by pushing her into a dresser in their bedroom at approximately 8:30 p.m. Bennett left the room and put his children to bed. When Bennett returned to their bedroom, he "smacked" C.S.'s "whole face," which caused her to "fall off into the dresser again." C.S. got back up and went to Bennett in a pleading manner, but Bennett "smacked" her again and knocked her head down. Bennett said C.S. looked "horrible," she was slouched over and hurting, and he "smacked" her into the dresser again. Bennett then grabbed her by the ponytail, and yanked her head back. He grabbed her by the neck and squeezed hard even though he knew she was frail from prior injuries. He also knew she was injured because he looked at her facial expression while he grabbed her neck.
¶ 9 Bennett then checked on his children and when he returned to his bedroom, he saw C.S. on the bed and thought she was faking a seizure. At approximately 1:30 a.m., five hours after the incident started, he decided to take his children to their mother's home in West Bend. He dropped the children off at their mother's home at approximately 3:00 a.m. When he returned home, Bennett checked on C.S.-she had a faint heartbeat, and he thought she was just unconscious. He left again, this time to purchase cocaine, which he immediately consumed. When he returned home, C.S. was barely breathing.
¶ 10 Bennett also admitted to being the source of all of C.S.'s injuries from the incident. When asked about self-defense, he responded: "I'm not going to paint no picture, I know self[-]defense and I'm not gonna hear that [expletive]." He went on to explain, "I slapped her pretty hard, you got to understand she was like 107 pounds and is sick." He stated that while C.S. was on the bed, he put his hands on her neck and was squeezing hard. He said that he did not call for help because he knew that at the time they were fighting, he was in trouble. Bennett called 911 to report a "suicide attempt" only after C.S.'s body was stiff and he knew she was dead. He made the 911 call at 5:40 a.m.
¶ 11 The autopsy revealed that C.S. had received multiple blunt force injuries to her head and neck. The cause of death was blunt force injury to the head and manual strangulation. Bennett was charged with first-degree reckless homicide.
¶ 12 Bennett was represented by the State Public Defender's Office (SPD). His first two attorneys moved to withdraw from representing him when communications broke down. The SPD appointed successor counsel who then represented Bennett through his plea and sentencing.
¶ 13 Throughout the proceedings, the issue Bennett pursued was whether C.S.'s death could have been caused by her old injuries or preexisting seizure disorder. Trial counsel hired an expert to investigate the cause of C.S.'s death and to review the Milwaukee County Medical Examiner's (M.E.) autopsy findings and report.
¶ 14 When the case did not resolve at the final pretrial conference on October 26, 2012, the State filed an amended information, charging Bennett with first-degree intentional homicide.
¶ 15 Following the final pretrial conference, trial counsel spoke with the expert. The expert told trial counsel that he concluded that C.S.'s old injuries and preexisting seizure disorder could not have caused the extreme subdural hemorrhaging that immediately preceded and caused her death. He also told trial counsel that he could not dispute the ultimate findings of the M.E. that C.S. died as a result of manual strangulation and/or blunt force trauma, both of which she sustained in the hours leading to her death. Additionally, the expert told trial counsel that C.S.'s death could have been caused by manual strangulation alone, blunt force injuries alone, or a combination of the two. Trial counsel then met with Bennett at the jail, informed him of the expert's findings, and thoroughly discussed the expert's assessment that old injuries or a preexisting seizure disorder were not a cause of C.S.'s death.
¶ 16 Bennett then decided to enter a plea, pursuant to a plea agreement whereby the State would withdraw the amended information charging him with first-degree intentional homicide and recommend a prison sentence consisting of thirty-five years of initial confinement, with the length of extended supervision left to the discretion of the trial court. In early November 2012, Bennett pled guilty to the charge of first-degree reckless homicide. In early February 2013, the trial court sentenced Bennett to forty-five years consisting of thirty-five years of initial confinement followed by ten years of extended supervision.
¶ 17 Bennett's first appellate counsel filed a notice of appeal and subsequently, a no-merit report. Bennett filed a response and a supplemental response in which he asserted that he would not have pled guilty or would have sought a plea bargain to a lesser offense if trial counsel had fully informed him of the expert's findings. This court ordered appellate counsel to file a supplemental no-merit report.
¶ 18 Shortly after this court issued that order, current appellate counsel advised this court that he would be substituting as Bennett's retained appellate counsel and asked this court to hold the pending no-merit report in abeyance because it was likely to be withdrawn. Subsequently, this court granted the substitution of counsel and dismissed the no-merit appeal without prejudice.
¶ 19 Bennett then filed motions for post-conviction relief and post-conviction discovery. He contended that his plea was not voluntary, knowing, and intelligent, that trial counsel was ineffective in advising him to plead to the charge and at sentencing,[5] and asked for sentence modification because the trial court failed to consider certain factors and wrongly considered other factors. He also asked for post-conviction discovery to assist his request for sentence modification. The post-conviction court denied both motions without a hearing. This appeal followed.
¶ 20 We will recite other necessary facts as we address Bennett's arguments.
DISCUSSION
I. Bennett Did Not Demonstrate that He Is Entitled to a Hearing on His Motion to Withdraw His Plea
A. The Standards for a Hearing and Applicable Law
¶ 21 Bennett argues that he is entitled to an evidentiary hearing concerning his motion to withdraw his plea. Under Wisconsin case law,
[w]hen a defendant seeks to withdraw a guilty plea after sentencing, he must prove, by clear and convincing evidence, that a refusal to allow withdrawal of the plea would result in "manifest injustice."... One way for a defendant to meet this burden is to show that he did not knowingly, intelligently, and voluntarily enter the plea.
State v. Brown , 2006 WI 100, ¶ 18, 293 Wis. 2d 594, 716 N.W.2d 906 (citation omitted). The manifest injustice test is also "satisfied if the defendant's plea was the result of constitutionally ineffective assistance of counsel." State v. Hudson , 2013 WI App 120, ¶ 11, 351 Wis. 2d 73, 839 N.W.2d 147.
¶ 22 Pursuant to State v. Bangert , 131 Wis. 2d 246, 274, 389 N.W.2d 12 (1986), a defendant may seek to withdraw a plea where the plea colloquy was defective. When a defendant alleges that some factor extrinsic to the plea colloquy renders the plea infirm, such as ineffective assistance of counsel, the defendant must satisfy the requirements of the Nelson/Bentley line of cases.[6] See State v. Howell , 2007 WI 75, ¶ 74, 301 Wis. 2d 350, 734 N.W.2d 48. Bennett asserts that his motion to withdraw his plea falls within the Nelson/Bentley line of cases.
¶ 23 Before a defendant is entitled to an evidentiary hearing under Nelson/Bentley :
[A] defendant first must allege sufficient, non-conclusory facts in his motion that, if true, would entitle him to relief. If the defendant fails to meet the pleading requirements, the [post-conviction] court in its discretion may nevertheless grant or deny an evidentiary hearing. If the defendant meets the pleading requirements, the [post-conviction] court then must look to the record.
A well-pled complaint may be denied without an evidentiary hearing if the record as a whole conclusively demonstrates that relief is not warranted. Unless the record conclusively demonstrates that the defendant is entitled to no relief, the [post-conviction] court must grant an evidentiary hearing.
Howell , 301 Wis. 2d 350, ¶¶ 76-77 (footnote omitted). "Whether a motion alleges facts which, if true, would entitle a defendant to relief is a question of law that we review de novo ." See State v. Bentley , 201 Wis. 2d 303, 310, 548 N.W.2d 50 (1996).
¶ 24 To establish that trial counsel's assistance was constitutionally ineffective, a defendant must show two elements: (1) counsel's performance was deficient; and (2) the deficient performance resulted in prejudice to the defense. State v. Balliette , 2011 WI 79, ¶ 21, 336 Wis. 2d 358, 805 N.W.2d 334. To prove deficient representation, a defendant must allege specific acts or omissions by trial counsel that are "outside the wide range of professionally competent assistance." Strickland v. Washington , 466 U.S. 668, 690 (1984). Prejudice occurs when trial counsel's error is of such magnitude that there is a "reasonable probability" that but for the error, the outcome of the proceeding would have been different. State v. Erickson , 227 Wis. 2d 758, 769, 596 N.W.2d 749 (1999). "Stated differently, relief may be granted only where there 'is a probability sufficient to undermine confidence in the outcome' i.e., there is a 'substantial, not just conceivable, likelihood of a different result.' " State v. Starks , 2013 WI 69, ¶ 55, 349 Wis. 2d 274, 833 N.W.2d 146 (citing Cullen v. Pinholster , 563 U.S. 170, 189 (2011) ).
¶ 25 The standard of review of the ineffective assistance of counsel components, deficient performance and prejudice, is a mixed question of law and fact. State v. Johnson , 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990). Thus, we will not overturn the trial court's findings of fact, " 'the underlying findings of what happened,' " unless they are clearly erroneous. See id. (citation omitted). On the other hand, the questions of law, the ultimate determination of whether counsel's performance was deficient and prejudicial to the defense, are determinations that we review independently. See id. "[C]ourts may reverse the order of the two tests or avoid the deficient performance analysis altogether if the defendant has failed to show prejudice." Id. at 128.
¶ 26 A defendant's claim that trial counsel provided ineffective assistance does not automatically trigger a right to an evidentiary hearing. State v. Allen , 2004 WI 106, ¶ 10, 274 Wis. 2d 568, 682 N.W.2d 433. A post-conviction court may deny a post-conviction motion without a hearing "if the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief." Id. , ¶ 9. Whether a motion has alleged sufficient facts that if true, would entitle a defendant to an evidentiary hearing is a question of law that we review de novo . See id.
B. Bennett Failed to Allege Sufficient Facts to Entitle Him to a Hearing on the Grounds His Plea Was Not Voluntary, Knowing, and Intelligent
Bennett's Arguments
¶ 27 Bennett generally asserts that his plea was invalid because he did not know that he had a defense. He argues that trial counsel told him that he had no defense and that he was persuaded to enter his plea based on trial counsel's representation.
¶ 28 Before Bennett could have been found guilty of first-degree reckless homicide, the State would have had to prove that:
1. [Bennett] caused [C.S.'s] death.
"Cause" means that [his conduct] was a substantial factor in producing the death.
2. [Bennett] caused [C.S.'s] death by criminally reckless conduct.
"Criminally reckless conduct" means:
• The conduct created the risk of death or great bodily harm to [C.S.]; and
• The risk of death or great bodily harm was unreasonable and substantial; and
• [Bennett] was aware that [his] conduct created the unreasonable and substantial risk of death or great bodily harm
3. The circumstances of [Bennett's] conduct showed utter disregard for human life.
See WIS. JI- CRIMINAL 1020 (emphasis added; footnotes omitted).
¶ 29 In support of his argument Bennett merely alleges that he did not have the required subjective awareness that his conduct toward C.S. created a substantial risk of death to her as required by the second element of first-degree reckless homicide. He ignores that the element reads "death or great bodily harm ."
The Plea Hearing Reflects that Bennett Understood the Elements of First-Degree Reckless Homicide
¶ 30 Although Bennett argues that he did not have the required subjective awareness that his conduct toward C.S. created a substantial risk that she could die, he does not allege that he did not understand the elements of the charge, which were discussed during the trial court's plea colloquy with him. We conclude that the record reflects that Bennett knowingly, intelligently, and voluntarily entered his plea.
¶ 31 We note that prior to the plea hearing, a signed guilty plea questionnaire and waiver of rights form with a copy of WIS. JI- CRIMINAL 1020 attached, were filed with the trial court.[7] The plea form recites that by signing the form, Bennett confirmed that he had reviewed and understood the form.
¶ 32 During the colloquy, Bennett told the trial court that he read and understood the plea form and that he had given truthful answers. He also told the trial court that he went over the plea questionnaire form and the complaint with trial counsel. Bennett told the trial court that he reviewed and read the documents-everything in this case, with his trial counsel. Further, he stated that he had enough time to review and discuss the case with trial counsel and was satisfied with trial counsel's assistance and representation.
¶ 33 Trial counsel told the trial court that he discussed the jury instruction with Bennett and explained the elements of the offense to him. Trial counsel also told the trial court that he was satisfied that Bennett understood the elements of the offense. During the plea colloquy, Bennett never told the trial court that he had any questions or that there was anything he did not understand regarding the entry of his plea.
¶ 34 We conclude that Bennett fails to allege sufficient non-conclusory facts that if true, would entitle him to relief. Even if Bennett was unaware that his conduct created a risk that C.S. could die, that does not constitute a defense to the charge because he could still be found guilty of the charge, if he was aware that his conduct created the risk of great bodily harm to C.S. He does not allege that he was not aware that his conduct created a risk of great bodily harm to C.S.-he merely alleges that he was not aware his conduct created a risk she could die.
¶ 35 Based on that allegation, Bennett makes the conclusory allegation that although he had a defense, trial counsel told him he had no defense and persuaded him to enter his plea. We conclude that Bennett's conclusory allegations are not sufficient to entitle him to a hearing on his claim that his plea was not voluntary, knowing, and intelligent.[8] See Howell , 301 Wis. 2d 350, ¶¶ 76-77.
II. Bennett Failed to Allege Sufficient Facts to Entitle Him to a Hearing on Grounds that Trial Counsel was Ineffective
¶ 36 Bennett makes the conclusory allegation that regardless of the availability of a legal defense, trial counsel advised him that he had no defense and he was persuaded by trial counsel's assertions that he would have no defense at trial. Bennett further argues that even if he was not persuaded, the fact that trial counsel had insisted that there was no defense, meant as a practical matter that no defense had been prepared, and none would be presented. This claim has two components.
¶ 37 First, Bennett asserts that trial counsel was not prepared to provide a defense to the charge because trial counsel advised Bennett that he did not believe he had a defense to the charge of first-degree reckless homicide.[9] Bennett's allegation is merely conclusory. Moreover, the record shows that it is inaccurate. At sentencing, trial counsel argued that because Bennett did not intend to kill C.S. he was not guilty of first-degree intentional homicide, the crime that Bennett would have faced if he proceeded to trial. He went on to explain that Bennett's actions in not seeking medical assistance could be explained by Bennett's belief that C.S. was having a seizure. He also stated that Bennett chose to deal with C.S.'s condition on his own because he did not understand how much distress she was in.
¶ 38 These are arguments that trial counsel would have made if the matter had gone to trial, and they reflect that trial counsel was prepared to provide a defense for Bennett. Bennett's allegation that trial counsel was not prepared to provide a defense is merely conclusory. We conclude that Bennett's conclusory allegations are not sufficient to entitle him to a hearing. See Allen , 274 Wis. 2d 568, ¶ 9.
¶ 39 Second, Bennett asserts that but for trial counsel's failure to give him accurate advice, he would have rejected the plea offer. To prove deficient representation, Bennett must allege specific acts or omissions by trial counsel that are "outside the wide range of professionally competent assistance." See Strickland , 466 U.S. at 690. The test is whether trial counsel "made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. Moreover, trial counsel "has the right and duty to recommend a plea bargain if he or she feels it is in the best interests of the accused." State v. Provo , 2004 WI App 97, ¶ 17, 272 Wis. 2d 837, 681 N.W.2d 272. See also State v. Rock , 92 Wis. 2d 554, 563-64, 285 N.W.2d 739 (1979) (adopting the proposition that " '[o]nce the lawyer has concluded that it is in the best interests of the accused to enter a guilty plea, he should use reasonable persuasion to guide the client to a sound decision' " (citation omitted) ).
¶ 40 Bennett's argument that trial counsel was ineffective in recommending that he enter a plea is also conclusory. First, Bennett ignores the fact that he was charged with first-degree intentional homicide, not first-degree reckless homicide, the lesser included offense. The first-degree intentional homicide charge carried with it mandatory life imprisonment with a minimum period of imprisonment of twenty years before Bennett could be eligible for release to extended supervision, and the possibility of life imprisonment without release. See WIS. STAT. §§ 939.50(3)(a), 973.014(1g)(a). A jury could conclude that Bennett's conduct after he beat C.S. and left her to die was evidence that he intended to kill her or was aware that his conduct was practically certain to cause her death. Trial counsel had to consider that Bennett could be found guilty of the first-degree intentional homicide charge when he recommended pleading guilty to the first-degree reckless homicide charge that carried a lower maximum sentence.
¶ 41 Next, Bennett argues that trial counsel was ineffective in recommending he enter a plea because he could have pled not guilty and won because "[a] strong trial attorney" would have argued that Bennett was not aware that his conduct created the risk of death to C.S. However, as discussed above, that is not the standard under the statute for first-degree reckless homicide. The awareness element is written in the disjunctive-death or great bodily harm. If trial counsel merely argued that Bennett was not aware that his conduct created a risk of death to C.S. and ignored the alternative great bodily harm, trial counsel could not make a good faith argument that Bennett was not guilty of the charge.
¶ 42 Here, as noted above, Bennett does not allege that he was not aware that his conduct created the risk of great bodily harm and he does not develop, let alone mention, an argument regarding a defense, based upon lack of awareness of great bodily harm. See State v. Pettit , 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (stating that we may decline to address undeveloped arguments). Therefore, he fails to allege sufficient facts to establish that trial counsel was deficient in recommending that he enter a plea to the charge.
¶ 43 We conclude that Bennett failed to allege sufficient facts to entitle him to a hearing on his claim that trial counsel was ineffective in advising him to plead guilty to first-degree reckless homicide. See Allen , 274 Wis. 2d 568, ¶ 9.
III. Bennett Failed to Demonstrate that Any New Factor Exists
¶ 44 Bennett argues that he is entitled to a hearing on his motion for modification of his sentence based on the existence of new factors. He argues that the trial court overlooked or "mis-depicted" facts that were highly important to the sentence. We conclude that Bennett does not present any new factors. Rather, his argument amounts to subjective opinions and a mere disagreement about how the trial court weighed the sentencing factors, as they applied to facts that were in existence and were known to the trial court or the parties at the time of sentencing.
A. The Standard for Sentence Modification Based on the Existence of a New Factor
¶ 45 State v. Harbor sets forth the standard of sentence modification as follows:
Deciding a motion for sentence modification based on a new factor is a two-step inquiry. The defendant has the burden to demonstrate by clear and convincing evidence the existence of a new factor.... Whether the fact or set of facts put forth by the defendant constitutes a "new factor" is a question of law.
See id. , 2011 WI 28, ¶ 36, 333 Wis. 2d 53, 797 N.W.2d 828. We review questions of law independently of the post-conviction court's determination. See id. , ¶ 33. Even if a new factor exists, a defendant is not automatically entitled to a sentence modification. Id ., ¶ 37. "Rather, if a new factor is present, the circuit court determines whether that new factor justifies modification of the sentence..... In making that determination, the circuit court exercises its discretion." Id .
¶ 46 Thus, to be entitled to a modification of sentence "the defendant must demonstrate both the existence of a new factor and that the new factor justifies modification of the sentence." Id. , ¶ 38. Where a trial court concludes that the facts do not constitute a new factor "as a matter of law, 'it need go no further in its analysis' to decide the defendant's motion." Id. (citation omitted).[10]
B. Bennett Did Not Establish the Existence of a New Factor
¶ 47 The post-conviction court found that Bennett had not established that any new factor existed. We agree. A "new factor" is " 'a fact or set of facts highly relevant to imposition of sentence, but not known to the trial judge at the time of the original sentencing, either because it was not then in existence or because , even though it was then in existence, it was unknowingly overlooked by all the parties.' " Id. , ¶ 40 (emphasis added; citation omitted). Citing State v. Norton , 2001 WI App 245, ¶ 13, 248 Wis. 2d 162, 635 N.W.2d 656, Bennett argues that when the trial court relies on inaccurate information, subsequent correction of that information can constitute a new factor. His reliance on Norton is misplaced because, unlike this case, the revocation of Norton's probation did not exist at the time of sentencing-here, all of Bennett's alleged facts were in existence and were known to the parties.
¶ 48 Bennett asserts that there are three categories of new factors the trial court did not consider or were "wrongly considered" that justify modification of his sentence.[11] We conclude that none of the facts that Bennett argues constitute new factors because the facts existed at the time of sentencing or were known to the trial court or the parties-in other words, they were not unknowingly overlooked. See Harbor , 333 Wis. 2d 53, ¶ 40.
¶ 49 Indeed, Bennett's arguments rely on an incomplete definition of a new factor. He cites Harbor for the definition of a new factor, stating that a new factor is a set of facts, highly relevant to the sentence, that were overlooked at the time of sentence. However, he omits the word "unknowingly" from the definition in Harbor and states that the issue on appeal is whether he presented "overlooked facts" that are highly relevant to his sentence, rather than "unknowingly overlooked" facts as required. See id.
¶ 50 Relying on his incomplete definition of new factor, Bennett never alleges that the facts he identifies did not exist at the time of sentencing or that they were unknowingly overlooked by the trial court or the parties. Rather, he argues that the trial court overlooked or "mis-depicted" facts. In fact, Bennett's opening appellate brief points out that in his post-conviction motion, he noted that "many of these additions or corrections were available to have been raised at the time of sentencing, but were overlooked, and argued that his [trial] counsel's failure to identify and raise these factors was ineffective."[12] By his own admission, Bennett concedes that he knew at sentencing about the existence of many of the facts that he now argues on appeal.
¶ 51 Bennett's arguments boil down to nothing more than Bennett reweighing the sentencing factors that the trial court considered and weighed, and arguing that the trial court should have weighed those factors in the same manner that Bennett asserts. We conclude that none of the facts that Bennett argues constitute new factors because the facts existed at the time of sentencing or were known to the trial court or the parties-in other words, they were not unknowingly overlooked.
IV. Bennett Did Not Establish that He Was Entitled to Post-Conviction Discovery of C.S.'s Medical Records
¶ 52 Bennett also argues that he is entitled to post-conviction discovery of C.S.'s medical records because the information he sought may have undermined facts that the trial court relied upon at sentencing, such as C.S.'s credibility and her life expectancy. Bennett asserts that the discovery he seeks is relevant in four ways: (1) the medical records might show that C.S. was more susceptible to intracranial bleeding caused by less intense force than the trial court perceived Bennett to have used in beating C.S. and would include narrative accounts of how C.S.'s prior traumas occurred, which would negate the conclusion that all her prior injuries were caused by Bennett; (2) the medical records might support the observations that C.S. bruised easily; (3) the medical records could show that the conditions shown in medical evaluations in the public records consisting of a long psychiatric history, PTSD, and disordered perception including psychotic features, persisted on the night of C.S.'s death;[13] and (4) the medical records may include evidence regarding C.S.'s life expectancy, estimated by the trial court to be thirty to forty years.
¶ 53 We conclude that Bennett has not shown that the requested discovery is critical, relevant, and material to his sentence.
A. Applicable Law and Standard of Review
¶ 54 A defendant has a right to post-conviction discovery, if the defendant establishes that the sought after evidence is critical, relevant, and material to an issue of consequence. State v. O'Brien , 223 Wis. 2d 303, 320-21, 588 N.W.2d 8 (1999).
"[E]vidence is [consequential] only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Evidence that is of consequence then is evidence that probably would have changed the outcome of the trial.
Id. (brackets in original; footnote and citations omitted). Further, "[t]he mere possibility that an item of undisclosed information might have helped the defense ... does not establish '[a consequential fact]' in the constitutional sense." Id . at 321 (brackets and ellipses in original; citation omitted). O'Brien indicates that the court regarded this as a factual issue: "Essentially, the circuit court found that the result of the trial would not have been different because the evidence was not material. We will not disturb a circuit court's findings regarding evidentiary facts unless they are clearly erroneous." See id. at 322.
B. Bennett Failed to Show that the Requested Discovery Is Critical, Relevant, and Material to His Sentence
¶ 55 The post-conviction court found that the requested discovery is not relevant to an issue of consequence because there is no reasonable probability that if the evidence was disclosed, the sentence imposed would have been different. See id. We agree.
¶ 56 The evidence regarding Bennett's conduct in causing C.S.'s death was overwhelming. He strangled her, beat her to the point of inflicting blunt force trauma to her head, left her dying in the apartment without ever calling for help until she was dead, and even then reported that she attempted suicide.
¶ 57 Here, at the beginning of its explanation for the sentence, the trial court stated that it reviewed all the documents in the case, the photos provided by the State, and the presentence investigation report. It went on to state that the factors it considers when imposing a sentence include: the gravity of the offense, the defendant's character, the need to protect the public, punishment, and deterrence. The trial court also stated that it looks at aggravating and mitigating factors. Over the course of sixteen pages of the transcript, the court explained how those factors applied to the facts of this case. We conclude that the four categories of information that Bennett requests in discovery would not have affected the trial court's sentence under all the facts and circumstances of this case.
¶ 58 If the medical records reflect that C.S. was more susceptible to intracranial bleeding, that fact would not have changed the trial court's perception of the amount of blunt force Bennett used while causing C.S.'s death. First, Bennett, again, ignores the fact that both experts opined that C.S. not only died from blunt force trauma to her head, but also from manual strangulation. Evidence that C.S. was susceptible to intracranial bleeding would not impact the fact that Bennett manually strangled her to death.
¶ 59 Moreover, the trial court relied on Bennett's description of how he caused the blunt force trauma that C.S. suffered. He described pushing her into a dresser, and then smacking her whole face which caused her to fall onto the dresser again. When she got back up and came to him, he smacked her again and knocked her head down. Bennett said C.S. looked horrible, she was slouched over and hurting and he smacked her into the dresser again. His own description of his conduct reflects the severity of the force he used as he admittedly repeatedly smacked her head into the dresser.
¶ 60 Additionally, Bennett merely asserts that the records would negate the conclusion that he caused all of C.S.'s prior injuries. However, he fails to cite to any statements by the trial court that it concluded that Bennett caused any of C.S.'s prior injuries. His argument is conclusory and not supported by the record.
¶ 61 Lastly, the fact that C.S. may have had a psychiatric history and may have fabricated some allegations of abuse would not create a reasonable probability that the sentence would have been different. Bennett fails to specify what, if any, incidents of abuse C.S. fabricated. The same is also true of his assertion that the records may include evidence regarding C.S.'s life expectancy that might refute the trial court's statement that she might live thirty or forty years. Not only are his arguments speculative and conclusory, there is no reasonable probability that if the evidence was disclosed, the sentencing would have been different.
¶ 62 We conclude that the requested discovery is not critical, relevant, and material to an issue of consequence because there is no reasonable probability that if the evidence was disclosed, the sentence imposed would have been different. See id. at 320.
CONCLUSION
¶ 63 For the foregoing reasons, we conclude that Bennett has failed to allege sufficient facts to entitle him to a hearing on his claims that his plea was not voluntary, knowing, and intelligent, and that trial counsel was ineffective in advising him to enter his plea to first-degree reckless homicide. We also conclude that none of the facts that Bennett relies upon constitute new factors because they existed at the time of sentencing or were known to the parties-in other words, they were not unknowingly overlooked. Further, we conclude that the requested post-conviction discovery is not relevant to an issue of consequence because there is no reasonable probability that if the evidence was disclosed, the sentence imposed would have been different. Therefore, we affirm.
By the Court .-Judgment and order affirmed.
Not recommended for publication in the official reports.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The Honorable David L. Borowski presided over the proceedings through the sentencing. The Honorable M. Joseph Donald presided over the post-conviction proceedings. We refer to them as the trial court and the post-conviction court, respectively.

Bennett references "great bodily harm" but he does not properly address it. As we discuss below, he mistakenly limits his arguments to whether he was aware that his conduct created a risk of death.

" 'Great bodily harm' means bodily injury which creates a substantial risk of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily injury." Wis. Stat. § 939.22(14) (2011-12). See also Wis. JI- Criminal 914.

On appeal, Bennett does not argue that trial counsel was ineffective at sentencing.

See Nelson v. State , 54 Wis. 2d 489, 195 N.W.2d 629 (1972), and State v. Bentley , 201 Wis. 2d 303, 548 N.W.2d 50 (1996).

See Wis. Stat. § 971.08 and State v. Bangert , 131 Wis. 2d 246, 266-72, 389 N.W.2d 12 (1986). See also State v. Hoppe , 2009 WI 41, ¶ 32, 317 Wis. 2d 161, 765 N.W.2d 794 (stating that a completed plea questionnaire and waiver of rights form helps to ensure a knowing, intelligent, and voluntary plea).

In passing, Bennett claims that he did not know that he had a defense to the element of the crime that he acted in utter disregard of C.S.'s life. He does not allege that he did not understand the jury instruction regarding this element of the offense, and he does not identify what he did not understand about the element of utter disregard when he entered his plea. He merely cites cases that define utter disregard for human life. He then argues that although his conduct after the fact could suggest disregard for C.S., it could equally well suggest Bennett's fear of arrest, his state of denial, or his stated belief that C.S. was faking a seizure. His arguments regarding utter disregard for human life are speculative and conclusory. Bennett fails to allege sufficient facts to entitle him to a hearing on his claim that he did not know he had a defense to the element of the crime that he acted in utter disregard of C.S.'s life. See State v. Howell , 2007 WI 75, ¶¶ 76-77, 301 Wis. 2d 350, 734 N.W.2d 48.

We note that Bennett argues that the post-conviction court did not address the ineffective assistance claim that he argued in his post-conviction motion. He asserts that the post-conviction court addressed whether trial counsel was ineffective in failing to develop a defense that C.S.'s death was caused by a pre-existing injury and held that trial counsel was not ineffective in failing to develop that defense. Bennett asserts that was never his argument and that, because the trial court never addressed his claims, its ruling was manifestly defective. Regardless, the determination of whether trial counsel's performance was ineffective is a question of law that this court reviews independently. See Strickland v. Washington , 466 U.S. 668, 698 (1984). Therefore, we address the claim.

Bennett argues that he does not have the burden to demonstrate by clear and convincing evidence the existence of a new factor. However, he is mistaken. See State v. Harbor , 2011 WI 28, ¶ 36, 333 Wis. 2d 53, 797 N.W.2d 828.

Bennett cites the following three categories: (1) "the [trial] court relied on an exaggerated understanding of the offense conduct, falsely indicating prolonged beating, imaginary cuts and other injuries"; (2) the trial court relied on "a stereotyped version of the aggressor-victim dynamic that omitted [C.S.]'s extensive history of criminality and violence, and inaccurate speculation as to the effect of [C.S.'s death] on nonexistent or estranged family members"; and (3) the trial court ignored mitigating factors of Bennett's conduct being in response to C.S.'s infidelity and in imperfect self-defense, that he took steps to avoid conflict, his service to his family and the community, his age, and deterrent collateral harms he had already suffered.

On appeal, Bennett does not argue that trial counsel was ineffective for not raising the facts that he now argues in seeking modification of his sentence.

Bennett argues that those facts could be relevant to show that some of C.S.'s reports of abuse were paranoid thoughts, fabricated, or even a part of self-inflicted injury.