# COURT OF APPEALS
## DECISION
## DATED AND FILED

## October 8, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2406**

STATE OF WISCONSIN

Cir. Ct. No. 2021TP23

IN COURT OF APPEALS
DISTRICT II

IN RE THE TERMINATION OF PARENTAL RIGHTS TO S.R.R., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

 PETITIONER-RESPONDENT,

 V.

D.R.-R.D.J.,

 RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Kenosha County: JODI L. MEIER, Judge. *Affirmed*.

¶1 LAZAR, J.[1] Diane[2] appeals, again,[3] from an order terminating her parental rights to her now ten-year-old daughter, Sarah, on the grounds that Diane was denied her constitutional right to counsel of her choice, or in the alternative, that the court-appointed trial counsel who represented her provided ineffective assistance of counsel during the jury trial on whether grounds existed to terminate Diane's parental rights.

¶2 Kenosha County, by its District Attorneys' office, representing the petitioner in the underlying termination of parental rights case, asserts that the trial court did not violate Diane's rights to counsel of her choice because she never retained alternate counsel and her proposed counsel was not entitled to a court appointment. The County also argues that the attorney appointed by the court to represent Diane did not provide her with ineffective assistance of counsel and asks that the court's order be affirmed. The guardian ad litem stands with the County.

¶3 This court concludes that the trial court did not erroneously exercise its discretion when it refused to remove a court-appointed attorney and issue a new appointment. At no point was Diane prohibited from retaining separate counsel. This court also concludes that, because Diane did not meet her burden to prove that the court-appointed attorney performed deficiently or that she suffered any

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

[2] To protect their confidentiality, pursuant to WIS. STAT. § 809.19(1)(g), the mother and child are referred to by the pseudonyms selected in the mother's brief: Diane and Sarah.

[3] Previously, Diane had appealed an order terminating her parental rights to Sarah entered in March 2022 after Diane failed to appear at a hearing. This court, in a one-judge opinion, pursuant to WIS. STAT. § 752.31(2)(e) (2021-22), reversed the order and remanded the matter back to the circuit court for further proceedings. *See Kenosha Cnty. Div. of Child & Fam. Servs. v. D.R.-R.*, No. 2022AP1812, unpublished slip op. (WI App June 1, 2023).

prejudice, she cannot establish ineffective assistance of counsel sufficient to warrant a new trial. Thus, this court affirms.

## BACKGROUND

¶4 Most of the background details with respect to the petition for termination of parental rights filed by the County are set forth more fully in the previous appeal, ***Kenosha Cnty. Div. of Child & Fam. Servs. v. D.R.-R.***, No. 2022AP1812, unpublished slip op. (WI App June 1, 2023), and are incorporated here. Accordingly, only the facts pertinent to *this* appeal will be outlined.

¶5 Diane, born in Guatemala, left school in the first grade, and is unable to read or write. ***Id.***, ¶2. Her primary language is Kaqchikel.[4] ***Id.***, ¶5 n.5. Diane entered the United States in December 2018 with Sarah, who was then three years old. ***Id.***, ¶2. In March 2019, Sarah suffered severe injuries indicative of physical and sexual abuse accompanied by significant blood loss that ultimately required a transfusion. At the time, Diane was living with multiple families and a total of six children, including Sarah, whose ages ranged from two to twelve years; these children were typically left alone at night.

¶6 One of the individuals living in the apartment with Diane saw an injury to Sarah's face and later saw her undressed and bleeding. The individual encouraged Diane to take Sarah to the hospital; she did not do so. Instead, Diane

---

[4] At various points of the case, Diane's language was also referred to as K'iché. ***D.R.-R.***, No. 2022AP1812, ¶5 n.5. Kaqchikel is very similar to K'iché; both are not Guatemalan, but rather Mayan dialects. It appears that this distinction was raised only in the current post-termination proceedings.

bathed Sarah and took her to a neighborhood market. An employee at the market, noticing the blood, also urged Diane to take Sarah to the hospital; again, she did not. Instead, the employee drove Diane and Sarah to the nearest emergency room.[5]

¶7      The County (the Juvenile Intake, Child Protective Services and the Police Department) were advised of Sarah's injuries and removed her from Diane's care, placing her with foster parents. In April 2019, the County filed a CHIPS[6] petition alleging Sarah to be a child in need of protection or services, pursuant to WIS. STAT. § 48.13, on multiple grounds of neglect, abuse, and sexual assault. The circuit court adjudicated Sarah to be a child in need of protection or services, and she remained outside of the home until Diane could meet the court-imposed conditions of return.

¶8      For the next two and one-half years, the CHIPS case proceeded in the circuit court, and Diane never met the conditions for Sarah's return. On March 29, 2021, the County filed a petition to terminate Diane's parental rights on the grounds of abandonment (pursuant to WIS. STAT. § 48.415(1)(a)2-3) and a continuing need of protection or services (pursuant to § 48.415(2)). Following a non-appearance by Diane, the court held her in default and, after a disposition

---

[5] Sarah was treated for the hemorrhaging from her vagina and facial bruising, and she was transferred to Children's Hospital where she received "aggressive resuscitation inducing blood transfusions."

[6] CHIPS stands for child in need of protection or services. *See* WIS. STAT. § 48.13.

hearing, Diane's parental rights to Sarah were terminated.[7]   *See* WIS. STAT. § 48.424(1).

¶9      Diane appealed, and in June 2023, this court reversed the default finding and remanded the matter for further proceedings. ***D.R.-R.***, No. 2022AP1812, ¶40.

¶10     In March 2024, the trial court held a four-day jury trial to determine whether there were grounds for terminating Diane's parental rights.  The County called ten witnesses including a sheriff captain (also born in Guatemala) who provided interpretation services, a Child Protection Services supervisor, a child abuse pediatrician from the Medical College and Children's Hospital Wisconsin, facilitators from Children's who supervised visitations, a County social worker, a Project Home case manager, a clinical psychologist, and Sarah's therapist.  Diane did not testify or call any witnesses.

¶11     The jury returned verdicts finding both grounds to terminate Diane's parental rights.  The second phase of the TPR case—the dispositional hearing regarding Sarah's best interests—took place on June 20, 2024, where both a County social worker and Diane testified.  The trial court concluded that it was in Sarah's best interest that Diane's parental rights be terminated.[8]  Following entry

---

[7] A termination of parental rights case "involve[s] a two-step process." ***Tammy W-G. v. Jacob T.***, 2011 WI 30, ¶18, 333 Wis. 2d 273, 797 N.W.2d 854.  The first step is the fact-finding hearing on grounds for termination. ***Id.***  "The second-step, the dispositional hearing, occurs only after the fact-finder finds a … ground has been proved and the [trial] court has made a finding of [parental] unfitness." ***Id.***, ¶19.  It is in the second step that the court considers the best interest of the child. ***Id.***  The court is the fact-finder at the dispositional hearing.

[8] The parental rights of Sarah's father were also terminated in the same order.  Those rights are not at issue in this appeal.

of an order to that effect, Diane filed a postconviction motion seeking a new trial on the grounds that her trial counsel provided ineffective assistance of counsel and that the trial court violated her right to counsel when it denied her request for counsel of her choice.

¶12 In March 2025, the trial court held a two-day **Machner**[9] hearing at which the court-appointed trial counsel testified. The court issued an oral ruling on June 12, 2025, denying the postconviction motion. An order to that effect was entered the same date. Diane appeals.

## DISCUSSION

¶13 Diane raises two issues. First, she contends that the trial court violated her constitutional rights to counsel of her choice when it denied her request to replace the court-appointed attorney with separate counsel. Next, Diane asserts that her court-appointed attorney provided ineffective assistance of counsel that prejudiced her when he failed to object to certain evidence, among other concerns. On neither issue does Diane prevail.

### I. Right to Counsel of Choice

¶14 All defendants—and parents facing a termination of parental rights—share a constitutional right to select the counsel of their choice. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). That right, however, is not absolute. For instance, a party cannot continually fire court-appointed counsel and request new counsel in an effort to delay proceedings. *State v.*

---

[9] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

*Lomax*, 146 Wis. 2d 356, 361, 432 N.W.2d 89 (1988). Moreover, the right to counsel of choice "is circumscribed in several important respects." *Wheat v. United States*, 486 U.S. 153, 159 (1988). There are times when this right "must yield to the 'need for a fair and efficient administration of justice[.]'" *United States v. Sinclair*, 770 F.3d 1148, 1154 (7th Cir. 2014) (quoting *United States ex rel. Kleba v. McGinnis*, 796 F.2d 947, 952 (7th Cir. 1986)). As well, and of import in this appeal, "'the right to counsel of choice does not extend to defendants who require counsel to be appointed for them.'" *United States v. Sutton*, 127 F.4th 1067, 1070 (7th Cir. 2025) (quoting *Gonzalez-Lopez*, 548 U.S. at 151); *Carlson v. Jess*, 526 F.3d 1018, 1025 (7th Cir. 2008) ("an indigent defendant generally has no right to have [their] counsel of choice appointed"). "Whether trial counsel should be relieved and a new attorney appointed is a matter within the [trial] court's discretion." *State v. Jones*, 2010 WI 72, ¶23, 326 Wis. 2d 380, 797 N.W.2d 378.

¶15 This court independently reviews whether a party has been deprived of a constitutional right, *id.*, including a right to counsel of their choice. Factual findings underlying the trial court's exercise of discretion may not be arbitrary or unreasonable, but rather "must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981).

¶16 The trial court, in its oral ruling, set out its rationale for the appointment of trial counsel as well as its denial of the "request" by Diane and efforts of Diane's prior appellate counsel to secure a different trial counsel for the remanded matter. The court specifically appointed trial counsel for Diane due to

[h]is extensive experience with CHIPS and TPR cases and given the serious nature of a TPR case and the serious rights that are at stake [the court] wanted [to] approve an attorney with whom the [court] knew to be dedicated and capable of properly trying a termination of parental rights case complete with a jury trial, and contested disposition, and in whom this [court] had confidence in to try the case properly, and provide effective assistance of counsel.

¶17   In October, two months after the trial court appointed an attorney, Diane's prior appellate attorney wrote to the court (in the CHIPS action) advising that she'd been in communication with Diane, and that the attorney had arranged for a new trial attorney for Diane.[10]  That letter included a typed, unsigned letter from Diane (in English and Spanish, not K'iché) indicating that Diane wanted a different attorney to represent her.  That letter, now signed by Diane, was then filed in the TPR action.  The court explained that the letter gave no good reason to support the switch other than that the new attorney spoke Spanish.  Because Diane is not fluent in Spanish, the court believed that it "would be risky to communicate in Spanish" when Diane's native language is K'iché, an indigenous Mayan dialect.

¶18   At the time the October letter was filed, the case was set for a December 4, 2023 jury trial.  In November 2023, because the court-appointed attorney was having difficulties reaching Diane,[11] the trial was adjourned to March 2024.

---

[10]  The September 2023 letter in the Record appears to be missing a second page.

[11]  Diane did not appear at the November 2023 hearing.  The trial court wondered whether the communication troubles the court-appointed attorney was having reaching Diane was "due to interference" from the two attorneys seeking to interject themselves into the action on behalf of Diane.

¶19     At the next hearing in December 2023, Diane did appear and the trial court addressed her letter.  Diane "was advised that she could hire her own attorney at any time" but the court found it was "clear" "that [Diane] didn't have any legitimate basis to ask for a different attorney."  Diane stated "if [the court-appointed attorney's] okay then that's fine with me."  She added, "I just want to make sure that he will work on my case because this is a very difficult case[.]"

¶20     The new attorney was persistent and, on December 27, 2023, personally wrote to the trial court in the TPR action that "she'd been approached by [Diane] about representing her in this case."  While the new attorney offered to accept the appointment and to work pro bono, the court had no familiarity with this attorney, and she was not on the court's advocate counsel list.  Accordingly, the court did not change its appointment.

¶21     The trial court recognized that "these proceedings require heightened legal safeguards to prevent erroneous decisions[,]" but, citing to *Dane County Department of Human Services v. Mabel K.*, 2013 WI 28, 346 Wis. 2d 396, 828 N.W.2d 198, explained that it had "no such familiarity or confidence" with the proposed attorney as it did with the attorney it had already appointed.  The attorney appointed by the court was on the court's advocate counsel list; the proposed attorney was not.  The court further explained that the appointed attorney "knew … what he's doing, is highly experienced, is highly successful, and it is not uncommon in the age of attorney shortages for Judges here in Kenosha County to directly ask an attorney to take a case[.]"

¶22    In its post-termination oral ruling, the trial court relied upon ***State v. Suriano***[12] and held that "[i]ndigent defendants do not have a right to an attorney of their own choice," but they do "have the right to effective assistance of counsel." The trial court asserted it had properly exercised its discretion in appointing a well-known, highly experienced TPR attorney for Diane. Even so, the court continued, "[a]t no time did [it] prevent [Diane] from hiring her own attorney." The court even listed the steps that Diane or her proposed new attorney could have taken to effectively switch counsel:

- Diane "could have contracted" with the new attorney as she had been told she could do at the December 2023 hearing.

- The new attorney could have filed a Notice of Retainer or a motion to change representation.

- The new attorney could have appeared at a hearing seeking substitution of counsel.[13]

¶23    Since none of these steps were taken, the trial court "reject[ed]" the contention that Diane's right to counsel was violated by her not obtaining the counsel she (apparently) wanted. The court also rejected any argument that the court-appointed attorney had a responsibility to withdraw when he learned that

---

[12]  2017 WI 42, ¶21, 374 Wis. 2d 683, 893 N.W.2d 543 ("Indigent defendants who cannot afford to pay for an attorney, however, do not have a right to an attorney of their own choice or the right to successive appointments.")

[13]  The trial court also noted that the new attorney had strings attached to her offer: she wanted a *court* appointment so she should could obtain pro bono credit.

10

another attorney wanted his court appointment. That lack of action was also held by the trial court not to be ineffective assistance of counsel.

¶24 No one disputes that the trial court was within its rights to appoint an attorney for a parent in a termination of parental rights proceeding who fails to meet the SPD eligibility requirements—as Diane did in this case. The question here is whether the court erred when it learned, midway into the remanded case, that different counsel sought to be appointed to represent Diane. This court concludes that the court did not erroneously exercise its discretion when it denied new counsel's request to obtain a court appointment. Even with its refusal to change appointments, that court did not bar *Diane* from taking any steps to secure other counsel. Diane still held those cards in her hand.

¶25 In reaching this conclusion, this court first recognizes the unique facts in this matter, and just as the trial court, it looks somewhat askance at the concept that it was *Diane* who was seeking new counsel. The initial letter from Diane seeking new counsel is typed and is in Spanish and English. Diane cannot type, and she does not speak either Spanish or English. The letter was filed the same date that her prior appellate counsel filed a letter in the prior CHIPS matter, seeking to intervene or obtain appointment. The trial court "surmise[d]" that the new attorneys wrote the letter, had Diane sign it, and then they sent it to the court. That court even mentioned that the Wisconsin State Supreme Court Rules "prohibit an attorney from communicating with a person he or she knows is represented by another attorney about the subject of the representation without

11

consent of the other attorney or authority by law which there wasn't any or a court order."[14]   Nonetheless, the new attorney persisted.

¶26     Next, despite the trial court's statement to Diane (translated into K'iché) that she "could hire her own attorney at anytime," Diane took no steps to effectuate a change in counsel.   After the appointment of new trial attorney following remand for a new grounds trial, Diane appeared in court with *that* attorney and did not object to the representation.   Even after "her" letter to the court, Diane failed to appear at the next scheduled court date to push for new counsel.   When Diane did appear at the following hearing, she stated that her prior appellate attorney had written the letter and basically told Diane to send it so that attorney could be back on the case.   She did not assert that there were grounds to remove the court-appointed attorney.[15]   Following the court's refusal to remove the trial attorney, Diane made no further requests for different counsel—not during the grounds trial, the contested disposition hearing, or any other time prior to her post-termination motion.

_____

[14] This court is not implying or holding that the new attorneys violated any SCR's in their efforts to secure their participation as counsel for Diane.

[15] Diane now claims that there *were* reasons to remove the court-appointed attorney.  She cites to the rescheduled trial when the court-appointed attorney had difficulties reaching her.  But, the trial court believed that these difficulties were the result of the two new attorneys reaching out to Diane.  She cannot claim difficulties in communication as a basis for a new appointment when the new attorneys are causing the difficulties.

Additionally, Diane asserts that the court-appointed attorney did not speak her language, but neither did the new attorney.  Finally, it is only the prior appellate counsel who raised the issue that Diane had "continued confusion over case matters" and that Diane was "more comfortable with a Spanish-speaking female attorney."  Diane never stated that to the trial court when it questioned her following "Diane's" letter to the court.  Diane never stated these concerns or preferences in any subsequent hearing, and more tellingly, Diane did not testify at the ***Machner*** hearing.

12

¶27     Finally, the proposed new attorney never filed a Notice of Retainer or Motion for Substitution of Counsel. That attorney never appeared before the trial court with Diane's approval. That attorney did write to the court and say she had "been approached" by Diane "about representing her" in the TPR action, but nothing more. The attorney, however, had strings attached to her pro bono offer: she sought a court appointment or else she would not represent Diane. When the court declined to appoint that attorney—someone it did not know and who was not on the court's advocate counsel list—the new attorney took no further actions. And, at no point during the hearings, the grounds phase trial, the disposition hearing, or otherwise did Diane raise any concerns about her court-appointed attorney or ask for a new appointment. In fact, in early December 2023, Diane accepted that the court-appointed attorney would work on her difficult case.

¶28     Diane asserts that the trial court and the County miss the point because, once the new counsel agreed to represent Diane pro bono, this was no longer a court-appointment issue. And, Diane now on appeal appears to assert that the appellate attorney letter was actually a motion to substitute appointed counsel. Neither argument has merit.

¶29     Quite bluntly, Diane did not "secure[] no-cost representation" which would have rescinded her petition for appointment of counsel and affidavit of indigency. At best, Diane contingently secured no-cost representation. Diane neglects to recognize that her "no-cost" representation only took effect *if* the trial court withdrew the first appointment and appointed the appellate counsel's suggested attorney. The court declined to do so but—and here's the critical point—it granted Diane the ability to hire any attorney, even the potentially "no-cost" one.

¶30    Diane further argues that her "new" no-cost attorney provided adequate notice to the trial court with the second letter and proposed order. Even if the letter constituted a motion for substitution, it was not a cut-and-dry motion. It was a motion to obtain a court appointment. It was not a substitution motion. That being the case, the court had the discretion to determine whether to remove a known commodity in a highly complicated TPR case and replace him with an unknown, non-local attorney. It made a reasoned decision and denied the "motion." That denial, however, was not the end of the matter. Diane still had the ability to hire the new attorney at no or little cost. Diane still had the opportunity to tell the court communications with the court-appointed attorney were irretrievably broken or that she had no faith in that attorney. Diane still had options, including asking the new attorney to drop the demand for a court appointment. She used none of these. Diane cannot now argue both sides: that it was no longer an appointment situation but she was entitled to a new appointment.

¶31    Given these undisputed facts, this court is hard-pressed to accept that Diane took early or sincere efforts to secure separate counsel of her choice. It *is* clear that Diane's prior appellate counsel—despite her lack of experience as a TPR trial attorney—wanted to remain allied with Diane and wanted to find a trial attorney she felt comfortable with and with whom she could assist from the sidelines.[16] That wish was the appellate attorney's, not necessarily Diane's. Had Diane truly wanted a different trial attorney, she was advised that she could hire one at any time. She did not do so. She could have renewed or repeated a

---

[16] Had the prior appellate attorney so wished, she could have offered to assist the current court-appointed attorney from the sidelines.

preference for a female attorney. She did not do that either. Diane accepted the trial court's appointment and proceeded to trial.

¶32 Diane's lack of ability to understand English (and Spanish) and her limited education does not inexorably lead to the conclusion that her wishes were ignored. In fact, those limitations cut both ways as it appears the prior appellate attorney was pushing Diane to forego the appointment of an experienced TPR attorney to satisfy the appellate attorney's preferences and that Diane was just willing to go along with that preference regardless of her own views.

¶33 Moreover, it appears this issue on appeal is driven by the prior appellate attorney and does not take into account that that attorney (and the new trial attorney she proposed step in) failed to properly substitute into the action. The trial court did not erroneously exercise its discretion when it denied Diane's request to switch court-appointed attorneys. It took into account the facts and stated them clearly on the record (its past experience with the local TPR attorney who was on the advocate counsel list versus the unknown attorney when there was a complicated TPR proceeding that was definitely heading to trial). It most definitely did not erroneously exercise its discretion when it denied outside attorneys' efforts to re-insert themselves into the TPR case. Its determinations were not arbitrary, nor were they unreasonable given the facts of this case. The decision not to switch appointments was the product of a rational mental process carefully laid out on the record by the trial court. *See Jones*, 326 Wis. 2d 380, ¶23. There was no clear factual error or error of law.

¶34 Diane was given every opportunity to hire or retain new counsel. Merely because that new counsel demanded appointment in lieu of simply substituting in does not convert the trial court's reasonable decisions into a

violation of Diane's rights. Therefore, this court concludes that Diane was not denied her right to counsel of her choice.

## II. Ineffective Assistance of Counsel

¶35 It is well settled that criminal defendants are constitutionally guaranteed the right to the assistance of competent counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). This fundamental right is also applicable in Wisconsin to parents in termination of parental rights cases. *State v. Shirley E.*, 2006 WI 129, ¶¶30-31, 298 Wis. 2d 1, 724 N.W.2d 623; WIS. STAT. § 48.23(2). The "statutory provision for appointed counsel [to parents in a CHIPS proceeding] includes the right to *effective* counsel." *A.S. v. State*, 168 Wis. 2d 995, 1004-05, 485 N.W.2d 52 (1992). An attorney's performance "need not be perfect, indeed not even very good, to be constitutionally adequate." *State v. Thiel*, 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305 (citation omitted).

¶36 "The benchmark for judging any claim of ineffective assistance of counsel is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *State v. Jenkins*, 2014 WI 59, ¶34, 355 Wis. 2d 180, 848 N.W.2d 786. The two-prong test to be used by the trial court was set forth in *Strickland* and adopted in Wisconsin in *State v. Mayo*, 2007 WI 78, ¶¶33, 60, 301 Wis. 2d 642, 734 N.W.2d 115. "First, the [party] must demonstrate that counsel's performance was deficient." *Id.*, ¶33. "Second, the [party] must demonstrate that counsel's deficient performance was prejudicial to his or her defense." *Id.* In essence, "[a party] who alleges that counsel was ineffective by failing to take certain steps must show with specificity what the actions, if taken, would have revealed and how they would have altered the outcome of the proceeding." *State v. Prescott*,

2012 WI App 136, ¶11, 345 Wis. 2d 313, 825 N.W.2d 515 (quoting *State v. Byrge*, 225 Wis. 2d 702, 724, 594 N.W.2d 388 (Ct. App. 1999), *aff'd,* 2000 WI 101, 237 Wis. 2d 197, 614 N.W.2d 477).

¶37     The party asserting an ineffective assistance of counsel claim bears the burden of proof as to both of the *Strickland* analysis prongs.  *See State v. Romero-Georgana*, 2014 WI 83, ¶¶39-41, 360 Wis. 2d 522, 849 N.W.2d 668; *State v. Hudson*, 2013 WI App 120, ¶11, 351 Wis. 2d 73, 839 N.W.2d 147.  This court "need not address both the performance and the prejudice elements, if the [party] cannot make a sufficient showing as to one or the other element." *Mayo*, 301 Wis. 2d 642, ¶61; *State v. Tomlinson*, 2001 WI App 212, ¶40, 247 Wis. 2d 682, 635 N.W.2d 201, *aff'd*, 2002 WI 91, 254 Wis. 2d 502, 648 N.W.2d 367.

¶38     When reviewing trial counsel's performance, this court gives great deference to counsel, and every effort must be made to avoid a determination of ineffectiveness based upon hindsight.  *State v. Reynolds*, 206 Wis. 2d 356, 363, 557 N.W.2d 821 (Ct. App. 1996).  "Rather, the case is reviewed from counsel's perspective at the time of trial, and the burden is ... on the [appellant] to overcome a strong presumption that counsel acted reasonably within professional norms." *Id.* (citation omitted).  Constitutional ineffective assistance "is a mixed question of fact and law."  *State v. McDowell*, 2004 WI 70, ¶31, 272 Wis. 2d 488, 681 N.W.2d 500.  And, while this court "will not disturb the [trial] court's findings of fact unless they are clearly erroneous[,]" whether defense counsel's performance was constitutionally ineffective is a question of law to be reviewed de novo.  *Id.*; *State v. Pitsch*, 124 Wis. 2d 628, 634, 369 N.W.2d 711 (1985).

17

¶39 In this appeal, Diane's claim for ineffective assistance of counsel is based upon nine[17] alleged errors by her court-appointed attorney that consisted of failures to object to the County's presentation of unnecessary and unfair evidence that was, in Diane's view, irrelevant, unfairly prejudicial, cumulative, or based on hearsay. These can be broken down into six[18] general categories: (1) prior CHIPS orders; (2) Sarah's injuries and trauma; (3) testimony on conditions of return; (4) best interests; (5) undocumented or illegal alien status; and (6) Diane's

_____

[17] The nine areas of deficient performance alleged by Diane include:

1. "[The trial court]'s prior determinations on ultimate issues for the jury."

2. "Excessively gruesome details of injuries to [Sarah's] genitals."

3. "Implication that Diane played a role in Sarah's injuries."

4. "Implication that Diane subjected Sarah to multiple other experiences of trauma."

5. "Expert testimony opining Diane could never meet conditions of return."

6. "'Best interests' evidence in the grounds phase."

7. "Diane and her family are undocumented individuals."

8. "Misstatements of fact on Diane's care of Sarah and response in seeking medical care."

9. "Failure to demand interpreter of the same dialect, Kaqchikel, as Diane's native language."

[18] In her Reply, Diane asserts that the County failed to address three of her arguments and that this court may deem them conceded. *Charolois Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 108-09, 279 N.W.2d 493 (Ct. App. 1979). This court concludes that each of the nine areas of alleged deficient performance of counsel was addressed by the County or by the trial court in its oral ruling and, thus, declines the opportunity to hold that any arguments have been conceded.

indigenous language. In none of these areas was the court-appointed attorney defective, nor was there any prejudice to Diane. Each is addressed below.

### A. CHIPS orders.

¶40    Diane's first argument is that the County had a strategy to imply that the trial court had already decided the ultimate issue before the jury: the orders in the CHIPS action were introduced with the use of the court's name in an effort to unfairly sway the jury. Because the court-appointed attorney did not object right away, Diane contends she was unduly prejudiced and the jury heard repeatedly that the court's orders were definitive. The absence of objections, motions to strike, or requests for curative instructions lead Diane to assert that there was both deficient performance of services and prejudice.

¶41    First, this court notes that CHIPS orders are often admitted as evidence in TPR grounds trials. *Steven V. v. Kelley H.*, 2004 WI 47, ¶37, 271 Wis. 2d 1, 678 N.W.2d 856 ("Some statutory grounds for unfitness, however, are expressly provable by official documentary evidence, such as court orders or judgments of conviction.") The question here resolves around the fact that the trial court was the CHIPS court and the *name* of the judge presiding over the trial was mentioned to the jury.

¶42    The trial court rejected the argument that the use of its name on permanency planning orders was prejudicial. It also rejected the concept that the mention of the CHIPS orders was an inappropriate "tactic" by the County. To the contrary, the court implicitly held that Diane was missing the point by focusing on the name on the order and ignoring that there *were* orders that lead to the TPR petition:

Well, first of all, the jury is deciding questions of fact, and the concept of permanency, the evidence presented is relevant and proper because the concept of permanency was explained.

….

… the jurors are instructed that they are the sole judges of the facts of this case and they are further instructed that the issue of termination of parental rights is not within their purview and that that rests solely upon the Judge.

So to say [that the court-appointed attorney] failed to ask the Court to strike testimony or for a curative instruction or move for a mistrial because of this testimony, there's no basis for a mistrial. There was no curative instruction necessary because there was no issue to cure. It was relevant evidence. Jury instructions explain things properly and again I find that there's no deficient performance by [the attorney] as it relates to that issue.

¶43    This ruling is not clearly erroneous. Diane failed to persuade the trial court that its name on the orders was so over-the-top that the jury was unable to make its own fact-findings. The jury was going to hear (and possibly see) the CHIPS orders regardless of who signed the orders. This court does not accept the contention that knowledge that the trial judge was the CHIPS judge placed any greater weight on the intrinsic, underlying fact that a CHIPS order was issued.

### B.    Sarah's injuries and trauma.

¶44    During a grounds phase jury trial, the jury is typically told about the reason that the child was initially removed from the parent's home. It sets the stage for *why* the jury is there. "It is readily apparent that a history of parental conduct may be relevant to predicting a parent's chances of complying with conditions in the future, despite failing to do so to date." ***La Crosse Cnty. Dep't of Hum. Servs. v. Tara P.***, 2002 WI App 84, ¶13, 252 Wis. 2d 179, 643 N.W.2d 194. Here, the underlying facts were—as all parties agree—gruesome. Sarah's

20

injuries were tragic and graphically appalling, in addition to being life-threatening. There are no allegations that Diane *caused* these injuries. The issue that upset the other adult in the home, the employee at the market, the County, and apparently the jury, was Diane's *response* to the injuries.

¶45    In *Tara P.*, we stated:

> In determining whether "there is a substantial likelihood" that a parent will not meet conditions for the return of his or her children, a fact finder must necessarily consider the parent's relevant character traits and patterns of behavior, and the likelihood that any problematic traits or propensities have been or can be modified in order to assure the safety of the children.

*Tara P.*, 252 Wis. 2d 179, ¶18. In addition, "events predating dispositional orders may also be relevant to another issue at termination proceedings: whether a county department of social services made 'reasonable' efforts to provide services ordered by a court." *Id.*, ¶14 n.4. *See also* WIS JI—CHILDREN 324 (jury can consider "the characteristics of the parent or child ... the level of cooperation of the parent ... and other relevant circumstances of the case" when assessing whether the County made reasonable efforts to provide court-ordered services to facilitate the conditions of return). Thus, the trial court's holding that this evidence—albeit gruesome—was relevant and admissible is reasonable, rationally related to the case, and not clearly erroneous.

¶46    With respect to the court-appointed attorney's failure to object to extensive evidence as to the grievous nature of Sarah's injuries, which resulted in the CHIPS petition and the trauma she experienced afterwards, the trial court found the testimony was relevant and admissible pursuant to *Tara P.* Because it described the circumstance that led to Sarah's removal from Diane's care and

custody as well as explained the conditions Diane had to meet for Sarah's return, the court allowed it into evidence. The court held

> It allows for a context and helps the jury understand[] the reasons for and the basis for what the parent must do to complete conditions of return and why. It's evidence that's highly probative[.]
>
> ….
>
> … It's relevant to help the jury understand what services DCFS is required to provide.
>
> ….
>
> … Are they bad facts for the mother? Well, yeah.
>
> They're the reality though. ... As much as I'm sure a defense attorney or a parent in a proceeding such as this would like facts to be anemic or watered down or excluded altogether, we know trials are search - - searches for the truth. It's not the Court's role to manipulate reality.

¶47     Additionally, the trial court found that the court-appointed attorney "did make objections when he thought the evidence was too graphic or crossed the line and he actually won those." There was also a continuing objection made by the court-appointed attorney to some of this testimony. In addition, the court-appointed attorney explained that it was his strategy and practice not to object to opening statements and closing arguments because they are not evidence and jury instructions so advise the jury.

¶48     Diane also asserts that the County inappropriately implied that Diane played a role in Sarah's injuries or that she subjected Sarah to multiple other experiences of trauma. This, Diane contends, was presented through the testimony of multiple witnesses. These witnesses, however, testified to their personal observations of how Sarah interacted with Diane after she was removed from the home. This testimony was relevant and, while it was prejudicial, that is not the

issue. The testimony related to how Diane was attempting to meet her conditions of return. That does not constitute a reason to exclude the evidence, much less to make unsuccessful objections. Even Diane's complaints over the child therapist's opinions[19] fall flat. The trial court held that this testimony was "highly relevant" to proving the grounds that Diane was an unfit parent and was not subject to objection:

> [The child therapist], testified about [Sarah's] trauma history and the seriousness of that history. The causes of [Sarah] being detained. How the trauma with the child was significant and is relevant to the mother's understanding of her daughter's needs. … The daughter's trauma. It's not testimony about comparing [Diane] to the foster family and at no time did any party argue that.

¶49    It was for these reasons that the trial court did not find deficient performance with respect to the testimony about Sarah's injuries and Diane's response. This court does not agree that this was an attempt to "retry the CHIPS case." The findings in the CHIPS case were the foundations upon which the TPR case was built. The impact of the CHIPS orders was not overly inflammatory;[20] it was relevant and admissible under *Tara P.* It was rationally related to the case. This court, affording due deference to the court-appointed attorney and following the dictates set forth in *Tara P.*, concludes that that decision is not clearly erroneous.

---

[19] This court wonders that either party is surprised a heavily abused child like Sarah should meet the "diagnostic criteria for complex post-traumatic stress disorder" which "is diagnosed when a person or child has experienced multiple repeated experiences of acute distress ... without the resolution of feeling safe again."

[20] Sadly, Diane's counsel appears to believe that the facts underlying Sarah's CHIPS case are the worst ones presented in juvenile court. That is simply not true. Parents' and/or guardians' lack of humanity to defenseless children comes in many horrible forms.

**C.    Conditions of return testimony.**

¶50    A part of the issues with which the jury was charged to resolve was what conditions of return were set and whether Diane had met, or come close to meeting, those conditions.  Clearly, in order to establish the second ground of parental unfitness—the continuing need for protection or services under WIS. STAT. § 48.415(2)—the County had to establish that Diane did not meet court-ordered conditions of return.  *See Sheboygan Cnty. Dep't of Health & Hum. Servs. v. Julie A.B.*, 2002 WI 95, ¶13, 255 Wis. 2d 170, 648 N.W.2d 402.

¶51    Diane contends that the failure to object to the County's psychology expert's testimony that Diane could never meet the conditions for return was yet another example of ineffective assistance of counsel.  She also contends that this argument was not addressed by the County and could be deemed conceded by this court.  First, experts are allowed to provide this type of opinion testimony.  *Brown County v. Shannon R.*, 2005 WI 160, ¶43, 286 Wis. 2d 278, 706 N.W.2d 269 (a properly qualified expert may give an opinion as to whether a parent is "able to meet the conditions for return within" a given time period).

¶52    This court has already addressed and dismissed that concession argument in general, but in this case, there is absolutely no dispute that the County addressed the psychology expert's testimony in its brief.  Diane's main argument is that the expert's "testimony lacked current relevance and was based on stale data, rendering it unreliable as an assessment of Diane's *present* ability to parent." That is not a basis for objection; it is a basis upon which to conduct "[v]igorous cross-examination." *See Seifert v. Balink*, 2017 WI 2, ¶132, 372 Wis. 2d 525, 888 N.W.2d 816 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993)).

¶53 The trial court swiftly dealt with this argument. It held that

> [The psychology expert's] testimony was relevant as to the service she provided which was ordered by the Court at the CHIPS disposition hearing and it was included in the CHIPS disposition order.
>
> It relates to the continuing need of protection or services ground alleged. It dealt with the service that was provided and her findings and analysis actually played into [the court-appointed attorney's] strategy again to make [Diane] sympathetic to the jury so there would be no reason for him to object. So I don't find any deficient performance by [the court-appointed attorney] as it relates to that issue.

¶54 Again, this decision by the trial court was not clearly erroneous, was the product of a rational mental process, and will not be overturned.

### D. Best interests.

¶55 A termination of parental rights case "involve[s] a two-step process." *Tammy W-G. v. Jacob T.*, 2011 WI 30, ¶18, 333 Wis. 2d 273, 797 N.W.2d 854. The first step is the fact-finding hearing on grounds for termination. *Id.* "During this step, the parent's rights are paramount." *Julie A.B.*, 255 Wis. 2d 170, ¶24 (quoting *Evelyn C.R. v. Tykila*, 2001 WI 110, ¶22, 246 Wis. 2d 1, 629 N.W.2d 768 (citations omitted)). "During this step, the burden is on the government, and the parent enjoys a full complement of procedural rights." *Julie A.B.*, 255 Wis. 2d 170, ¶24.

¶56 While "'[t]he best interests of the child is the polestar of all determinations under [WIS. STAT.] ch. 48, the Children's Code[,]'" *State v. B.W.*, 2024 WI 28, ¶75, 412 Wis. 2d 364, 8 N.W.3d 22 (quoting *State ex rel. Darryl T.H. v. Margaret H.*, 2000 WI 42, ¶33, 234 Wis. 2d 606, 610 N.W.2d 475), "[t]he best interests of the child shall be the prevailing factor considered by the court in determining the disposition...." *Oneida Cnty. Dep't of Soc. Servs. v. Therese S.*,

2008 WI App 159, ¶16, 314 Wis. 2d 493, 762 N.W.2d 122 (alteration in original; quoting WIS. STAT. § 48.426(2)).  Our state supreme court "has thus concluded that the best interests standard is confined to the dispositional phase, and that at the fact-finding stage, the best interests of the child are not to be considered." ***Door Cnty. Dep't of Health & Fam. Servs. v. Scott S.***, 230 Wis. 2d 460, 468, 602 N.W.2d 167 (Ct. App. 1999); ***Waukesha Cnty. Dep't of Soc. Servs. v. C.E.W.***, 124 Wis. 2d 47, 60-61, 368 N.W.2d 47 (1985).

¶57    In its oral ruling, the trial court quickly shut down the "best interests" argument and clearly found that "[a]t no time was there comparisons made between [Diane] and the foster family so there's nothing to object to on that front."  Moreover, the court noted that at no time was the phrase "best interests" uttered.

¶58    With the lack of the "best interests" phrase, Diane focuses upon a claim that the witnesses spoke about permanence for Sarah.  But, that is what the grounds phase trial is about.  In addition, mentions of permanency and permanency planning were testified to as an explanation of the CHIPS procedures and how the case came to be before the jury.  Jurors were instructed that they would not be the ones to decide whether Diane's parental rights will be terminated, their responsibility "is to determine whether the grounds for termination alleged in the petition have been proved."  WIS JI—CHILDREN 300.

¶59    Diane's arguments on this point are without merit.  Jurors are presumed to follow instructions provided to them by the trial court. ***Weborg v. Jenny***, 2012 WI 67, ¶69, 341 Wis. 2d 668, 816 N.W.2d 191; ***State v. Grande***, 169 Wis. 2d 422, 436, 485 N.W.2d 282 (Ct. App. 1992).  As noted above, neither opening statements nor closing arguments are evidence, and jurors are cautioned

to remember that when they deliberate. *See Mayo*, 301 Wis. 2d 642, ¶44. The court properly advised the jurors, telling them twice that closings and other statements by the attorneys are not evidence.

¶60    Finally, the court-appointed attorney testified it was his strategic plan not to raise too many objections. This avoided emphasizing bad facts and assisted in his efforts to paint Diane as a sympathetic mother who walked to America to help give her child a better life.

¶61    The trial court did not erroneously exercise its discretion in declining to give this argument any weight. Neither does this court.

### E.    Undocumented/illegal status.

¶62    The trial court declared that, because the "words undocumented or illegal alien were never used[,]" the court-appointed attorney did not provide ineffective assistance of counsel. To the contrary, that attorney testified at the *Machner* hearing that he used Diane's efforts to come to America and get a visa as part of his overall strategy to garner sympathy for Diane.

¶63    That strategy, whether it was the best idea or not, was described by the attorney as follows:

> I was always trying to make [Diane] look like someone that would walk a thousand miles for the best care of her daughter.
>
>     ….
>
>     ... I was going with the sympathy. The idea that [Diane] was doing the absolute best she could according to her limitations, her poverty, her desire as I put it [to] walk a thousand miles for her child for the best of the child, … I'm very liberal. I defend. I - - I believe in these people.

27

> I believe that this country has always benefited from every influx of people we've ever got.

¶64 The trial court found this "sympathy" strategy was planned and not a basis upon which to find ineffective assistance of counsel. Rather

> His theory of defense was not to collaterally attack the CHIPS case and even saying that, the words undocumented and or illegal alien, were still never used so the background of [Diane] fed into [the court-appointed attorney's] strategy and is solidly relevant. Not marginally relevant, but solidly relevant in … the determination of whether DCFS provided appropriate services.

> To determine despite other cultural acceptances whether [Diane] gained the proper knowledge to secure a finding that she completed … services. That she absorbed the knowledge to be able to safely parent. That she demonstrated an understanding of principles taught by service providers so as to allow her to safely parent her child. CHIPS cases are not a one size fits all. It's important for a jury to understand individual dynamics and nuances in a particular case.

¶65 That decision—based on the clear strategy of an experienced attorney—is not clearly erroneous. It is reasonable and worthy of deference.

## F. Kaqchikel language.

¶66 Finally, the trial court, in its oral ruling addressing the concern that Diane could not understand the trial testimony or witnesses (or her court-appointed attorney), noted that "not once did an attorney raise a competency issue [regarding Diane]. Not once in six years." Moreover, not once over those six years that Diane and Sarah's cases progressed, was the court ever told that Diane did not understand her K'iché interpreter. Most important, there were no allegations that her court-appointed attorney was ever told that Diane lacked understanding of either testimony or her interpreter. As to the court's approximately 20 admonitions to have attorneys and/or witnesses slow down, the

court explained it does that "all the time. Nearly every day. Most hearings every day." And, the admonitions are also in cases *not* involving non-English speakers; they are to assist the court reporter at times. Accordingly, the court (noting new post-termination counsel did not regularly practice in the county) found there was no deficient performance by the court-appointed attorney related to this argument.

¶67 A second part of Diane's new argument is that she really didn't speak K'iché, but rather spoke Kaqchikel. This argument was raised after six years of the assistance of a K'iché to English interpreter[21] who assisted Diane starting with the CHIPS proceeding. This interpreter also assisted Diane in her communications with all of her SPD and court-appointed attorneys *outside* court proceedings as well.

¶68 Now, after all of these proceedings—including a prior successful appeal—Diane raises the new indigenous language issue that first arose when a police captain testified, on day two of the grounds jury trial, that he believed Diane's indigenous language was similar to that spoken by some of his Guatemalan relatives. Even after that testimony, Diane did not ask the trial court to get her a different interpreter or indicate in any manner whatsoever that she spoke Kaqchikel and could not understand K'iché. Diane did not even testify at the ***Machner*** hearing that she had any such difficulties. The Record is, thus, sparse, and the trial court cannot be faulted for finding it difficult to believe.

¶69 The trial court's rationale underlying its decision is well-reasoned, on point, and persuasive. It held

---

[21] There are no interpreter certifications for the K'iché language.

There's no doubt that [Diane] is not highly educated. There's no doubt she is unsophisticated. I've heard no evidence that [the court-appointed attorney] was told by [the interpreter] or anyone else and more importantly by [Diane] herself that [she] was not understanding something. [Diane] did not testify to this issue during our two days of evidentiary [*Machner*] hearings back in March.

At no time in six years did I ever hear that [Diane] was not understanding her K'iché interpreter. How would [the court-appointed attorney] be ineffective for not raising an issue when he was not apprised that there was an issue to begin with? He's - - he's not. He's not ineffective. Again, I didn't hear that [Diane] told [her court-appointed attorney] she wasn't understanding.

You can't come in and make an argument that my attorney did not argue something that I never told him about. That defies logic and that is not deficient performance[.]

¶70 The court-appointed attorney even stopped testimony during the grounds phase jury trial to inquire as to whether the interpreter was able to translate some technical medical terms. After the K'iché interpreter confirmed she was able to interpret the terms (while not necessarily fully explaining what they meant to Diane), the trial court asked for interruptions if there was ever "any issue whatsoever" "with either [the interpreter] understanding with her having the ability to properly interpret or for [Diane] not to have the ability to understand what [the interpreter] is interpreting for her[.]" Therefore, both Diane and her interpreter were on notice that they should tell the court if there were ever any communication/interpretation issues. Neither did so during the jury trial, the disposition hearing, or at the post-termination hearings.

¶71 To now raise this issue without corroborating testimony by Diane or the interpreter or both—at any hearing below—is insufficient to meet Diane's burden of proof. The trial court's decision in this final area was not clearly erroneous.

### G. Prejudice.

¶72 Having concluded that the court-appointed attorney did not provide deficient services to Diane, this court need not even address possible prejudice, the second prong of the *Strickland* analysis. *State v. Savage*, 2020 WI 93, ¶25, 395 Wis. 2d 1, 951 N.W.2d 838 ("If the [party] fails to satisfy either prong, we need not consider the other.") (quoting *State v. Breitzman*, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93). It is addressed here nonetheless.

¶73 The trial court held that Diane "has not established a reasonable probability that a jury would [not] have found grounds for termination of her parental rights had [the court-appointed attorney done] all the things that [Diane's current attorney] said he should have done in hindsight[.]" The court added, "a party's not entitled to a perfect attorney[,]" and an "[a]ttorney may not be perfect to be constitutionally adequate."

¶74 Here, Diane's court-appointed attorney was better than just adequate. He reviewed extensive files and discovery. He prepared for and defended during a four-day jury trial, a contested dispositional hearing, and more. Diane has not shown that his performance was so deficient that it fell below the standard of professional conduct and has prejudiced Diane. *See Strickland*, 466 U.S. at 687. We are all being asked to, with the benefits of the goggles of hindsight, determine that a different strategy would inexorably lead to a different—better—outcome for Diane at either the grounds phase jury trial or the dispositional hearing. There is no basis for such a tightrope walk, and this court declines to do so.

\*          \*          \*          \*

¶75 In sum, the trial court found that the ineffective assistance of counsel argument rested almost entirely on a difference of potential trial strategies and that Diane is asking the court to "eliminate the distorting effects of hindsight." That is something it refused to do. It is axiomatic that a party "does not show the element of deficient performance 'simply by demonstrating that [her] counsel was imperfect or less than ideal.'" *State v. Burton*, 2013 WI 61, ¶48, 349 Wis. 2d 1, 832 N.W.2d 611 (quoting *State v. Balliette*, 2011 WI 79, ¶22, 336 Wis. 2d 358, 805 N.W.2d 334).

¶76 For these reasons, this court concludes that Diane has failed to meet either of the *Strickland* prongs. She has failed to show that her court-appointed attorney's performance was deficient or that it "fell below an objective standard of reasonableness" considering all of the circumstances. *Romero-Georgana*, 360 Wis. 2d 522, ¶40 (quoting *Strickland*, 466 U.S. at 688). Neither has Diane shown that she was prejudiced by the court-appointed attorney's deficient performance and that absent those alleged errors, there is a "reasonable probability" that the results at the grounds phase jury trial (and/or the contested dispositional hearing) would have been different. *Strickland*, 466 U.S. at 691-92, 694.

## CONCLUSION

¶77 Diane's right to the counsel of her choice—to the extent that it was implicated in the context of court-appointed attorneys—was not violated, and the trial court did not erroneously exercise its discretion when it refused to remove a court-appointed attorney and appoint the attorney suggested by Diane's prior appellate counsel. *See Sutton*, 127 F.4th at 1070; *Gonzalez-Lopez*, 548 U.S. at 151; *Jones*, 326 Wis. 2d 380, ¶41. Diane did not secure separate representation despite the assurance that she could hire any attorney she selected. The court's

decision was the product of a rational process. *Id.*, ¶23. For those reasons, Diane has failed to meet her burden of proof with respect to the first issue on appeal.

¶78    "As *Strickland* reminds us, there is a 'wide range of professionally competent assistance,' and the bar is not very high." *State v. Westmoreland*, 2008 WI App 15, ¶21, 307 Wis. 2d 429, 744 N.W.2d 919 (2007) (citation omitted); *see also Yarborough v. Gentry*, 540 U.S. 1, 11 (2003) (lawyer need not be a Clarence Darrow to survive an ineffectiveness contention). As the trial court noted, no one is entitled to a "perfect" attorney. Based upon the facts in this matter, this court concludes that Diane has failed to establish that her court-appointed attorney provided deficient, ineffective assistance of counsel or that Diane suffered any prejudice. The trial court's conclusions are affirmed.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.